PARK FALLS STATE BANK, Appellant, vs. FIDELITY & DEPOSIT COMPANY OF MARYLAND, Respondent.

*December 7, 1931—January 12, 1932.*

414

The cause was submitted for the appellant on the brief of *C. E. Lovett* of Park Falls, and for respondent on that of *Douglass Van Dyke* of Milwaukee.

FOWLER, J. The plaintiff claims that the bond should be construed as meaning that the payment of the premium

each year made the bond a separate contract of indemnity for that year and obligates the defendant to make good the embezzlements of the employee during that year, and that it is entitled to recover the total amount of Smith's embezzlements during the several years he was covered by the bond; in other words, it contends that the bond is cumulative. The trial court determined that the bond is merely a continuing bond, not cumulative, and only obligates the defendant to pay the highest amount of the indemnity specified for Smith in the schedule (e) in which his name is included. The plaintiff further claims that if the bond is not construed as it contends it should be, it should be so reformed as to express the meaning it contends for, on the ground that it was originally represented by the defendant to have such meaning. We will consider (1) the construction of the bond and (2) whether it should be reformed.

(1) The bond recites that it incorporates the entire agreement. The original schedule attached should doubtless be considered in interpreting the agreement as it is expressly made a part of the bond. However, this schedule contains nothing that could aid in the interpretation. It is a mere statement of the names of the employees covered by the bond and the amount of the liability of the defendant in respect of each. The recitals in the 1915 and 1916 schedules (d) if they had been in the original schedules might have been significant of what the parties intended and understood when the bond was executed and might therefore have important bearing on the interpretation of the bond. But not being in the original schedule they were not originally considered by the parties as expressing their intent. Recitals in the schedules subsequent to the first could not change the meaning of the bond unless the change were agreed to by the parties. Modification could only be effected by mutual consent. The plaintiff claimed and the court found it was

not informed and did not discover any changes in the form of schedules used. Under this finding the changes in the 1917 and 1923 forms of the schedules did not change the original meaning of the bond against the plaintiff, and by the same token the changes in the 1915 and 1916 schedules did not change its meaning in its favor. Each schedule necessarily determines the employees covered and the amount of the coverage, as the face of the bond provides it shall, but it in no wise changes the terms or interpretation of the bond as originally written. It was held in *U. S. F. & G. Co. v. Crown Co.* 145 Md. 514, 125 Atl. 818, that statements in notices sent on expiration of annual premium periods did not change the meaning of the bond as executed. No more can statements contained in the schedules.

Plaintiff contends that the form of schedules 1915 and 1916 (d) indicates a practical construction by the defendant that each year's continuance of the bond constituted a separate contract and rendered the defendant liable for all defalcations during that year. They tend to support that view but cannot be taken as necessarily forcing that construction in view of the terms of the bond itself, which are inconsistent with the idea that the bond is in effect a series of bonds each running for a single year. The form of the schedule last used (e), which specifically limits the aggregate recovery to the largest amount specified when the coverage of an employee is changed, weakens the effect in this regard of the statements of the 1915 and 1916 schedules. It indicates clearly that the defendant was putting, or at least trying to put, an interpretation on the contract different from the plaintiff's.

Plaintiff also contends that the letter (f) shows that the defendant considered that the bond in effect makes each year's renewal a separate contract. If it may be considered as showing defendant's interpretation of the contract it does

not support plaintiff's view that the bond is cumulative. Its statement that if a new bond were given each year the old bond would have to be "returned for cancellation" is inconsistent with that idea as if the old bond were "canceled" liability under it would cease. The form of the defendant's bond re-executed annually is not in the record, but we infer from a statement in the brief of respondent that while no liability exists under a bond returned for cancellation on the execution of a new annual bond, the defendant under such new bond is responsible for peculations discovered during the term of the new bond that were made by an employee covered by a previous bond during the term of his previous coverage, but the amount of the recovery is limited by the amount of the coverage of the defaulting employee, so that the liability under such a bond is not cumulative beyond the amount of the coverage of the employee specified in the schedules.

As we view it the bond must be construed upon its own terms, and so construing it we are of opinion that it should be construed as continuing and non-cumulative, limiting the defendant's liability to the amount stated in the schedules in connection with the name of the employee. We consider this manifest, if the construction be based upon the original bond and the schedule first attached which in no way affected the interpretation. This construction also follows if we consider the terms of the 1915 and 1916 schedules. As stated in *Fourth & First Bank & Trust Co. v. Fidelity & Deposit Co.* 153 Tenn. 176, 281 S. W. 785, 45 A. L. R. 610, in considering a bond in similar terms on which annual premiums were paid in successive years:

"The consideration of the bond is the first annual premium . . . and subsequent annual premiums. . . . The obligation of the bond is to indemnify against loss of money up to . . . (the amount stated). The life of the bond, the period it covers, is not fixed. It is to run until terminated

according to condition. . . . (It) in some aspects resembles a life insurance policy. A life insurance policy is not an assurance of a single year, with privilege of renewal from year to year by paying the annual premium, but is an entire contract of assurance for life. . . . So this bond is written to cover an indefinite period at the pleasure of the parties. Each premium, the first premium and subsequent premiums, is part consideration of the entire risk."

To the same effect is *National Bank of North Hudson v. National Security Co.* 105 N. J. L. 330, 144 Atl. 576; *Church Co. v. Ætna Ind. Co.* 13 Ga. App. 826, 80 S. E. 1093. A similar bond was held continuing as distinguished from constituting a series of contracts each for one year in *Docking v. National Security Co.* 122 Kan. 235, 252 Pac. 201. There are several cases which seem to hold to the contrary, at least in part. The terms of the bonds are not identical but are hard to differentiate from the bond in suit. Such are *Alex Campbell Milk Co. v. U. S. F. & G. Co.* 161 App. Div. 738, 146 N. Y. Supp. 92; *U. S. F. & G. Co. v. Crown Co., supra; U. S. F. & G. Co. v. Williams,* 96 Miss. 10, 49 South. 742; and *Ætna Casualty & S. Co. v. Commercial S. Bank,* 13 Fed. (2d) 474, which was reversed by the court of appeals, 19 Fed. (2d) 969, but the appellate court did not pass upon the question whether the bond was continuing and non-cumulative. We construe the bond upon what seems to us the correct principle, rather than upon the number of adjudicated cases pro and con.

(2) The trial court's findings do not contain any findings bearing upon the matter of reformation and the record is barren of any evidence so bearing. If the plaintiff's officers intended and understood when the bond was executed that it was to be cumulative in its effect, there is no evidence that the defendant so intended or understood. There is therefore no evidence of any mutual mistake, and the plaintiff's mistake, if any there was, was one of law in interpret-

ing the effect of the bond. This does not in itself warrant reformation. The plaintiff's claim for reformation seems to be grounded on the idea that the defendant represented that the bond was cumulative and should be held estopped from asserting the contrary, as to permit it to do so would work a constructive fraud upon the plaintiff. The only thing having possible bearing in support of the idea that defendant represented to plaintiff that it understood and interpreted the bond as cumulative is its letter of 1919, referred to in the statement of facts, written years after the execution of the bond; but that letter seems not so to indicate, as it states that if a new bond were given each year the previous bond would have to be returned for "cancellation." Cancellation of the bond would preclude the idea of recovery upon it and leave the company's only obligation under the new bond. We perceive no ground for reformation.

*By the Court.*—The judgment of the circuit court is affirmed.