## BRULATOUR et al. v. ÆTNA CASUALTY & SURETY CO.
### No. 66.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1936.

Vincent A. O'Connor, of New York City (John W. Davis and Vincent A. O'Connor, both of New York City, of counsel), for appellant.

Konta, Kirchwey & Engel, of New York City (Max D. Steuer and Mitchell Jelline, both of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Judgments were entered below for Jules E. Brulatour in the sum of $5,402.60 and for J. E. Brulatour, Inc., for $38,318.18 on verdicts directed by the court. The action is on a fidelity bond by which the appellant insured the appellees during the period involved against loss through embezzlement or other specified wrongful acts of any employees occupying the positions enumerated in a schedule attached to the bond. The appellees lost $38,491 by reason of an employee's acts of embezzlement between 1922 and 1929, inclusive, and the question presented is whether the appellant is liable for the full amount of this loss or whether its obligation was effectively limited by the terms of the bond to a maximum of $12,500. This raises the question of whether there were separate yearly contracts, under each of which the appellees could recover $12,500, or whether there was a single contract continued from year to year by annual premium payments with the liability thereon noncumulative.

The bond, written in 1924, extended its coverage by an attached rider to losses occurring in 1922 and 1923, undiscovered until a later date. It provided that the appellant for and in consideration of an annual premium bound itself to pay the assured for any losses suffered through embezzlement or similar acts by any of the employees occupying the positions "now named in, or hereafter added to, the schedule attached hereto, and which is hereby made a part of this bond, and not exceeding the amounts specified for such positions in such schedule, during the period commencing with the respective dates set opposite such positions in such schedule and pending as hereinafter stated."

The only methods of termination were set forth in the ninth provision, reading: "Any suretyship hereunder may be terminated as a whole, or as to any portion, or as to any employe, by the Company upon thirty (30) days notice to the Employer, and likewise the Employer may

terminate any suretyship by notice in writing to the company specifying the date of cancellation. Thereupon the Company shall refund the unearned premium for such suretyship if no claim has been paid thereunder."

The original schedule bears the same date as the bond, and recites a list of officials and employees of the assured, guaranteed under the bond in certain amounts for certain premium. There is a notation, "Effective date 1–4–24." The employee guilty of embezzlement was listed as guaranteed in the amount of $12,-500. The original bond provided: "The liability of the Company hereunder on account of all loss or losses caused by each and every person while filling any position named in said schedule, or added thereto, shall not exceed the amount set opposite such position in said schedule, or for which such position shall be added thereto. * * *"

Further it provided: "The Employer undertakes and agrees to furnish the Company on each premium anniversary date hereof a statement specifying the number of positions to be covered, the number of persons occupying each position, and the amount of coverage required for each position."

Pursuant to this requirement, the appellee furnished a schedule each year similar to the one above, in which this dishonest employee was covered for $12,500. These schedules recited that they were schedules for the original bond and that the listed employees were guaranteed for the stated amount under this bond. Each successive schedule recited as its effective date the first day of each year. Since 1931 the form of the schedules has been expanded. They referred to the bond as effective as of January, 1924, recited as consideration the renewal premium, and explicitly provided that "this list shall be deemed a part of the original bond and not a new obligation, nor shall it create a cumulative liability."

The bond and its yearly schedules did not constitute separate contracts. There is nothing either in the contract or the evidence to indicate that the original contract set up by the bond ever ended. None of the specified means of termination were employed, and there is no showing that it would expire automatically. The bond recited a consideration of an annual premium. This was paid yearly for a continuation of the insurance, as the premiums of a life insurance policy are paid to continue a single contract. The yearly schedules all expressly state that the coverage is under the original bond. The fact that the schedules recited a date upon which they should become effective is not an indication that this original obligation terminated and was renewed each year.

There is evidence showing how the parties regarded their relation. Shortly after the original bond was written, the business was incorporated, yet all the subsequent schedules recited that they guaranteed the employees of the individual and the corporation "as interests may appear." If each schedule was a separate contract, there would be no purpose or meaning to this provision, for the insurance would be covering employees of the corporation alone.

And, when the assured had discovered the loss and notified the company by letter, that letter stated that they believed the loss was greatly in excess of the amount of the bond. When it is considered that their estimate of the loss at this time was $25,000, it appears that they regarded the bond as covering them only to the extent of $12,500 in the aggregate, since even at this time they realized that the defalcations extended through a period of years. Moreover, the assured made no comment on the revised form of the 1931 schedule, which left no doubt that the company was assuming only noncumulative liability. If the appellees viewed the contract differently, they would not have remained silent when the rights which they assumed they had were thus cut down.

This schedule speaks of a "renewal premium." Appellees suggest that the use of this term by the appellant and their agent in several change notices, bills, and receipts was an indication that the appellant regarded the contracts as severally expiring at the end of each year. But any such inference that may be so extracted is negatived by the fact that the appellant referred to "renewal" even when it was clearly defining the contract as single throughout various years with noncumulative liability.

Another indication of the understanding of the parties in the original bond is found in the paragraph defining the extent of liability. It recites: "The lia-

bility of the Company hereunder on account of all loss or losses caused by the same person while filling two or more of such positions, either at the same time or at different times, shall not exceed the amount for which such positions shall be covered respectively, and in the aggregate the larger or largest of such amounts."

For instance, if an employee fills one position one year and is covered for $5,000, and another position the next year and was covered for $10,000, and stole $10,000 each year, this language would restrict the defendant's liability to $10,000. This provision is in keeping with the construction we place upon the contract. If the appellees' interpretation were followed, the provision would be a discordant note entirely inexplicable.

There is one potent aid to interpretation not furnished by the insurance company. If they had on the record the actuarial statistics on which the premium was based, it would materially assist a determination of what the premiums bought. Its absence, however, is not a ground for the inference sought by the appellees that calculation of a yearly premium for noncumulative insurance is impossible. Such insurance is written, and its results would furnish a statistical base for the calculation of premiums.

The authorities support the appellant's claims. Leonard v. Ætna Casualty & Surety Company (C.C.A.4, Nov. 12, 1935) 80 F.(2d) 205, Fourth & First Bank & Trust Co. v. Fidelity & Deposit Co. of Maryland, 153 Tenn. 176, 281 S.W. 785, 45 A.L.R. 610, and National Bank of North Hudson v. National Surety Co., 105 N.J. Law, 330, 144 A. 576, illustrate the rule that, where the bond is for an indefinite term, the date it begins to run being the only date given, the fact that the premiums were paid annually does not make the relation a series of separate yearly contracts. Russeks Fifth Ave., Inc., v. Ætna Casualty & Surety Co., 239 App.Div. 913, 265 N.Y.S. 953 (First Dept. 1933), construed a bond similar to that before us as continuous and providing only noncumulative coverage. The bond there omitted "in consideration of an annual premium," but this does not lessen the weight of its authority, since this recital is contained in the bonds construed in the cases previously cited and was held to be of no effect. See,

also, State ex rel. Freeling v. New Amsterdam Casualty Co., 110 Okl. 23, 236 P. 603, 42 A.L.R. 829, and Park Falls State Bank v. Fidelity & Deposit Co., 206 Wis. 413, 240 N.W. 154, where the bond was held continuous and the liability thereon single against a contention that the guaranty was annually severable into separate contracts. The cases resulting differently were based on different facts.

In Maryland Casualty Co. v. First National Bank, 246 F. 892 (C.C.A.5), the first schedule and the receipt for the second yearly premium both indicated a definite time at which the coverage terminated. Florida Central & P. R. Co. v. American Surety Co., 99 F. 674 (C.C.A.2), Proctor Coal Co. v. United States F. & G. Co., 124 F. 424 (C.C.Ga. 1903), and Campbell Milk Co. v. U. S. Fidelity & Guaranty Co., 161 App.Div. 738, 146 N.Y.S. 92 (2d Dept. 1914), similarly construed insurance capable of being read as separate yearly contracts because the facts showed yearly expiration dated.

In Ætna Casualty & Surety Co. v. Commercial State Bank (D.C.) 13 F.(2d) 474, reversed on other grounds (C.C.A.) 19 F.(2d) 969, the court based its conclusion on the fact that it found nothing to indicate that the parties intended to make the liability noncumulative. But this may not be said of the instant case, since the appellees remain silent when the schedules in 1931 used language impossible to misinterpret in limiting their liability to a noncumulative amount, and they also gave evidence of their understanding of the protection offered in their letter to appellant notifying them of a loss which they considered to be above the coverage afforded.

The Florida Central Case, supra, illustrates the difficulty and disadvantage to the assured in a series of policies for a single year. The insurance company there succeeded in evading any liability at all because the bond provided that only the last policy was to be in force at any time. Where the yearly contracts are separate, a provision similar to this, or one providing that a claim must be brought within a relatively short period after the expiration of the policy sued on, is typical and necessary to the protection of the insurer, but embarrassing to the assured in forcing him to discover the losses shortly after their occurrence. That difficulty is not present here.

The liability assumed by the appellant for the loss of the appellees must be limited to $12,500, and, unless the appellees agree to accept that sum, the judgment must be reversed.

Judgment reversed, unless appellees consent to a reduction of the judgment to $12,500.