## ÆTNA CASUALTY & SURETY CO. v. FIRST NAT. BANK OF WEATHERLY, PA.

### No. 6858.

Circuit Court of Appeals, Third Circuit.

April 3, 1939.

Rawle & Henderson, of Philadelphia, Pa. (Joseph W. Henderson and Thomas F. Mount, both of Philadephia, Pa., of counsel), for appellant.

Joseph J. Brown, John Arthur Brown, and D. Alexander Wieland, all of Philadelphia, Pa., for appellee.

Before DAVIS, BIGGS, and BUFFINGTON, Circuit Judges.

BIGGS, Circuit Judge.

The appellee, First National Bank of Weatherly, Pennsylvania, brought suit against the appellant, Aetna Casualty and Surety Company, for the sum of $45,600, upon a bond given by the appellant to cover any loss or losses occasioned by the dishonesty of any of the appellee's employees within the coverage of the bond. Trezise, the appellant's cashier, named in the bond, embezzled the appellee's funds as follows: from May 18, 1931, to May 18, 1932, $14,100, from May 18, 1932, to May 18, 1933, $10,500, from May 18, 1933, to May 18, 1934, $6,000, from May 18, 1934 to May 18, 1935, $25,911, or a total of $56,511. Trezise's fidelity was insured by the appellant from May 18, 1931, to May 18, 1935.

The bond was issued upon May 16, 1922, and by its terms the appellant bound itself to pay to the appellee, "* * * such pecuniary loss as the Employer shall sustain * * * through the *Embezzlement* * * * of * * * any of the employes listed in the schedule forming part of this bond * * * during the period commencing upon the date each em-

ploye is listed hereunder and continuing in amounts scheduled until the termination of this insurance."

The schedule attached to the bond listed the employees whose fidelity was insured by the bond. The names upon this schedule were changed from time to time as the employees of the bank changed. In September, 1929, a change notice was sent to the bank by the insurance company effective upon September 3, 1929, providing that the fidelity of Trezise was insured in the sum of $15,000.

The record shows that Trezise remained in the appellee's employ from September 2, 1929, until September 10, 1936, when he was discharged.

The bond also provided that the insurance as to any employee should terminate only upon the bank giving written notice to the insurance company specifying the date of termination or the insurance company giving thirty days' written notice of termination to the bank, and as to any employee by his retirement from the employ of the bank or upon discovery by the bank of loss through that employee.

The bond also provided that the employer should have the right at all times while it was in force without impairing its continuity to add to the schedule names of other employees than those specified and to increase or decrease the amount of insurance coverage of any employee upon giving the insurer written notice thereof. The bond also provided in connection with this subject that the addition or increase should be effective and binding on the insurance company on and after the date upon which the bank should receive the insurance company's written acceptance of such notice.

The question presented by the appeal at bar for our determination may be stated as follows: Does the bond create as to any employee covered by it a single and continuous liability limited by the amount specified as the coverage upon each employee without regard to the length of time the bond is in force, or does it create a separate and distinct liability for each successive period of twelve months during the time of the coverage?

The learned District Judge held this question was governed by the decision of this court rendered in the case of Standard Accident Insurance Company v. Collingdale State Bank, 3 Cir., 85 F.2d 375. The appellant had previously filed an affi-davit of defense demanding proof of the loss, and averred its liability could be only $15,000. Prior to trial it paid this sum to the appellee without prejudice.

■ The trial court received evidence aliunde the bond itself offered for the purpose of construing the instrument. This included schedules prepared by the appellant's agent at Scranton indicating insurance in effect under the bond, the "renewal dates" of such insurance in twelve months' periods and the amount of premium to be paid by the appellee for each period. These schedules were never delivered to the appellee and their receipt in evidence was error for two reasons. First, it was not proven that the appellee had received the schedules or that its officers had any knowledge of their contents, and, second, the bond contains neither patent nor latent ambiguity which would justify the introduction of extrinsic evidence. National Surety Co. v. McGreevy, 8 Cir., 64 F.2d 899, 901; City of Newark v. Mills, 3 Cir., 35 F.2d 110; United States F. & G. v. Barber, 6 Cir., 70 F.2d 220, 226; Etna Forge & Bolt Co. v. Youngstown S. & T. Co., 3 Cir., 282 F. 786; State Line & S. R. Co. v. Lehigh R. Co., 277 Pa. 227, 120 A. 829; Sternbergh v. Brock, 225 Pa. 279, 74 A. 166, 24 L.R.A.,N.S., 1078, 133 Am.St.Rep. 877.

Receipted bills, prepared by the agent of the appellant at Mauch Chunk, Pennsylvania, were also introduced in evidence. Each of these bills under the heading "Explanation" sets forth an expiration date for the bond in May of the following year. These bills were not upon the stationery of the appellant nor prepared by it, but even had they been prepared by the appellant and sent by the appellant to the appellee, we would still be of the opinion that the terms of the bond, unequivocal in their nature, would remain unimpaired except by such acts of the parties as would have constituted a novation.

We are therefore concerned with construing the terms of the bond itself and the schedule which by specific reference is incorporated as a part of the bond.

■ Upon its face the bond represents a continuous and continuing liability upon the part of the appellant which could be terminated only as provided by the fourth clause of the bond. The schedule shows the amount of insurance carried in respect to Trezise as $15,000. This represents the maximum amount of the appellant's liabil-

ity in respect to the employee named. There is not a word or a phrase in the bond which indicates the creation of successive periods of liability on the part of the appellant. The construction contended for by the appellee cannot be maintained in view of that phrase of the bond which provides that the appellant binds itself to pay to the appellee any loss sustained by the appellee due to the dishonesty of an employee "* * * listed in the schedule forming part of this bond * * * during the period commencing upon the date each employe is listed * * * and continuing in amounts scheduled until the termination of this insurance." These words serve to limit the liability of the appellant to the sum of $15,000 for the embezzlements of Trezise for the "period" commencing with the effective date of Trezise's addition to the bond schedule under the change notice and ending with the termination of the insurance.

The view which we have taken is supported by the decisions in the cases of Leonard v. Aetna Casualty & Surety Co., 4 Cir., 80 F.2d 205; Brulatour v. Aetna Casualty & Surety Co., 2 Cir., 80 F.2d 834; and Fourth & First Bank & Trust Co. v. Fidelity & Deposit Co., 153 Tenn. 176, 281 S.W. 785, 45 A.L.R. 610. The decision of Judge Lindley, however, in Aetna Casualty & Surety Co. v. Commercial State Bank of Rantoul, D. C., 13 F.2d 474, is squarely to the contrary. The decisions in the cases of United States Fidelity & Guaranty Co. v. Crown Cork & Seal Co., 145 Md. 513, 125 A. 818, and Maryland and Casualty Co. v. First National Bank, 5 Cir., 246 F. 892, are distinguishable upon the terms of the bonds or their attendant schedules from the case at bar.

Much emphasis is placed by the appellee upon the decision of this court in Standard Accident Insurance Co. v. Collingdale State Bank, 3 Cir., 85 F.2d 375, 376, and, as we have stated, the learned trial judge placed his decision upon the motion for a new trial and for judgment n.o. v. made by the appellant upon the reasoning of this court in that case. In the Collingdale case, however, the schedules attached to the bond showed definite expiration dates for the insurance granted, viz., August 28, 1930 and August 28, 1931. This court took notice of these circumstances, stating that the answer to the question presented by the cited case, viz., whether there was cumulative liability or a single continuous liability, should "* * * be sought in the bond and schedules which comprise the contract between the parties, for in the bond and schedules can be found the intention of the parties." Although not referred to by this court in the opinion the bond in suit in the Collingdale case contained a provision which, considered in conjunction with the schedules, clearly indicated the intention of the parties that the liability of the insurer should be cumulative. That clause read as follows: "In the event of any Employee hereunder being covered for separate periods in like or different amounts, the maximum liability of the Surety, for all defaults of such Employee occurring during two or more such periods, shall not exceed a sum equal to the largest amount of suretyship in force as to such Employee during any period within which any such default shall have occurred; nor shall the suretyship granted for one period cover defaults occurring within some other period." No such provision is found in the policy here declared on. The Collingdale case therefore can be distinguished clearly from the case at bar and does not control upon the circumstances of the instant case where neither bond nor schedule provide any term whatsoever for the liability of the appellant upon the obligation of the bond.

The motion for judgment non obstante veredicto made by the appellant was properly refused, not upon the ruling of this court in the Collingdale case but upon the ruling of the Supreme Court in Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177, the case not having been submitted to the jury upon a point reserved. See also Willing v. Eveloff, 3 Cir., 94 F.2d 344. In view of the time of the trial, Rule 50 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, may not be applied. A new trial must be had.

Accordingly, the judgment of the court below is reversed and the cause is remanded with directions to grant a new trial.