**NEW YORK CASUALTY CO. v. FORD et al.**

No. 11055.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1944.

Ralph W. Malone and Curtis White, both of Dallas, Tex., and Bert King, of Wichita Falls, Tex., for appellant.

**600**

H. M. Muse, of Wichita Falls, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellees, a co-partnership doing business as Ford-Montgomery Company, purchased a fidelity bond issued by the appellant indemnifying appellees and eleven other concerns against loss in an amount not to exceed $2,500 due to larceny, theft, embezzlement, etc., by one or more employees. The bond was dated June 10, 1942, and the premiums were payable annually. The premiums, which were calculated on information furnished by appellees as to the number of its employees and their classification as to position, were $330.78 for the first year and $296.38 for the second year.

Between June 10, 1942, and June 10, 1943, one Oleta Watts Scott, an employee of appellee, embezzled and misappropriated $3,876; and between June 10, 1943, and September 30, 1943, she embezzled and misappropriated $1,800. Alleging that the payment of the second annual premium was a renewal of the original bond and constituted for the second year a separate and distinct contract of indemnity, appellees sued to recover $2,500 for embezzlements from June 10, 1942, to June 10, 1943, and $1,800 for embezzlements from June 10, 1943, to September 30, 1943. Appellant defended on the ground that the bond was a continuing obligation and that the maximum liability thereunder was the sum of $2,500, which sum was tendered in the court below. The case was tried to the court without a jury and resulted in a judgment in favor of appellees in the sum of $4,282 ($4,300 less $18 security tax), the court holding that the original bond expired June 10, 1943; that the premium paid on that date created a new contract; and that appellees were entitled to recover $2,500 under the bond for the first year and $1,782 under the bond for the second year.

The question before us is whether the bond was a continuing obligation, or whether the original bond was renewed by the payment of the second annual premium and was a separate and distinct contract for the second year.

Considerable parol evidence was admitted, over the objection of appellant, to show representations made with reference to the bond by the general agents of vate interpretations, opinions, and conclutions of appellant's agents with respect to the nature of the contract evidenced by the bond. The bond was issued by appellant from its Dallas office and was sent to its general agents for delivery to appellees. It was accepted by appellees and retained by them without protest for fifteen months. The proof of claim was submitted under the bond, and this suit is based thereon. It is well settled in Texas that an insured must refuse to accept a policy which is not in accord with representations made by an agent. If he accepts the policy and retains it, whether he reads it or not, he is bound by its terms.[1] This is especially true where the insured retains the policy and presents and prosecutes a claim thereunder.[2] The contract as written is not ambiguous; hence, the rights of the parties are governed by it, and not by the private interpretations, opinions, and conclusions of appellant's agents. The parol evidence should have been excluded.

In 24 Texas Jurisprudence, § 115, pp. 825-826, it is stated: "Where the language used in a policy is so clear and unambiguous as to admit of but one construction, which is obvious to any person of ordinary intelligence, the insured cannot rely upon an oral construction thereof by the insurer's agent, which is in direct contravention of the terms used therein."

In Provident Insurance Company v. Bagby, Tex.Civ.App., 167 S.W.2d 813, 814, the court said: "Plaintiff contended the insurance contract was ambiguous and the trial court so construed it. If a written contract is stated so that it can be given a certain definite legal meaning, it is not ambiguous, and parol evidence is not admissible to show the intention of the parties. In this suit upon the written insurance contract it is our duty to determine the intention of the parties from the language used in the contract, if that can be done. It is the intention expressed by the language used in the

[1] American National Insurance Co. v. Huey, Tex.Com.App., 66 S.W.2d 690; Texas Life Insurance Co. v. Shuford, Tex.Civ.App., 131 S.W.2d 118; Southern Surety Co. v. Benton, Tex.Com.App., 280 S.W. 551; Ribble v. Roberts, Tex.Civ.App., 180 S.W. 620.

[2] Boatner v. Providence-Washington Insurance Co., Tex.Com.App., 241 S.W. 136.

written instrument that is to be determined, as contradistinguished from any intention the parties might have had but did not express therein. Bumpass v. Bond, 131 Tex. 266, 272, 114 S.W.2d 1172; Self v. King, 28 Tex. 552; United States Fire Ins. Co. v. Rothwell, Tex.Com.App., 60 S.W.2d 759; Commonwealth Cas. & Ins. Co. v. Bales, Tex.Civ.App., 151 S.W.2d 844; Morford v. California Western States Life Ins. Co., 166 Or. 575, 113 P.2d 629."

Again in Lewis v. East Texas Finance Company, 136 Tex. 149, 146 S.W.2d 977, 980, it is said:

"(a) When parties have reduced their contract to writing, and the terms and conditions of the written instrument are expressed without uncertainty as to the subject matter and nature of the contract, the writing is presumed to contain the whole of the agreement, and contemporaneous parol evidence is not admissible to contradict or vary the terms of the written instrument. Self v. King, 28 Tex. 552.

"(b) If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217."

The rule is thus stated by the Supreme Court of the United States in Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 352, 78 L.Ed. 711, 718, 92 A.L.R. 693: "As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the cal-

culations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

██ We think the provisions of the bond unequivocally limited the total liability of the insurer for the embezzlement of any one employee to the sum of $2,500 irrespective of the fact that misappropriations took place during and after the first year of the contract. The bond provided:

"New York Casualty Company (hereinafter called Underwriter) *in consideration of an annual premium,* hereby agrees to indemnify those named as insured * * * against any loss of money * * * belonging to the insured, * * * the amount of indemnity on each of such employees being $2500, through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication, or other fraudulent or dishonest act or acts committed by any one or more of the employees, * * * during the term of this bond as defined in Paragraph 1, and while this bond is in force as to the employee or employees causing such loss * * *.

"Term of Bond:

"1. That the term of this bond begins with the 10 day of June, 1942, standard time, at the address of the Insured given, and ends at 12 o'clock night, standard time as aforesaid, on the effective date of the cancellation of this bond; *and the payment of annual premiums during such term shall not render the amount of this bond cumulative from year to year.*

\* \* \* \* \*

"Cancellation as to Bond in its Entirety:

"7. That this bond shall be deemed cancelled as an entirety at 12 o'clock night, standard time upon the effective date specified in a written notice served by the Insured upon the Underwriter or by the Underwriter upon the Insured, or sent by registered mail. Such date, if the notice be served by the Underwriter, shall not be less than thirty days after such service, or, if sent by the Underwriter by registered mail, not less than thirty-five days after the date borne by the sender's registry receipt.

\* \* \* \* \*

"This bond is subject to the conditions and provisions contained in Joint Insured Rider R-186 * * *."

The joint insured rider R-186 set forth the names of the insured, twelve in num-

ber, and in clauses 2 and 5 provided as follows:

"2. That notice terminating the attached bond as an entirety, *or as to any or all of those designated as insured* or as to any Employee shall be given as provided therein either by the Insured first named in the paragraph hereof numbered 1, or the Underwriter to the other, as the case may be.

"5. *That regardless of the number of years the attached bond shall continue in force and of the number of premiums which shall be payable or paid, the Underwriter shall not be liable under the attached bond on account of any Employee,* whether to one. or more of the Insured covered under the attached bond, including those designated above and those heretofore and those hereafter covered as Insured, *for more in the aggregate than the amount carried under the attached bond on such employee."*

The emphasized parts of these provisions, in language too clear to require construction, make manifest that the insurer should never be liable on account of any one employee for more in the aggregate than the amount carried in the bond on such employee, which was $2500.

 As said in United States Fidelity & Guaranty Co. v. Barber, 6 Cir., 70 F.2d 220, 226: "Where the bond itself contains an unambiguous provision limiting recovery to the single stated amount therein for any employee, there is no room for construction, and total liability must be limited to such amount no matter how long the bond has been in force or how many premiums are paid for the insurance. State of Oklahoma v. New Amsterdam Casualty Co., 110 Okl. 23, 236 P. 603, 42 A.L.R. 829; Michigan Mortgage-Investment Corp. v. American Employers' Insurance Co. of Boston, 244 Mich. 72, 221 N.W. 140; United States Fidelity & Guaranty Co. v. First National Bank, 233 Ill. 475, 84 N.E. 670."

See also Leonard v. Ætna Casualty & Surety Insurance Co., 4 Cir., 80 F.2d 205; Brulatour v. Ætna Casualty & Surety Co., 2 Cir., 80 F.2d 834; Hack v. American Surety Co. of N.Y., 7 Cir., 96 F.2d 939; Ætna Casualty & Surety Co. v. Fisrt National Bank, 3 Cir., 103 F.2d 977.

The decisions of the appellate courts of Texas are in harmony with these authorities. Cf. Maryland Casualty Co. v. Farmers' State Bank & Trust Co., Tex.Civ.App., 258 S.W. 584; American Indemnity Co. v.

Mexia Independent School District, Tex. Civ.App., 47 S.W.2d 682, writ dismissed.

We agree with the appellant that the bond issued by it was a continuing obligation and that the maximum liability thereunder for the embezzlements by Oleta Watts Scott was the sum of $2,500.

Reversed and remanded.