**COLUMBIA HOSPITAL FOR WOMEN AND LYING-IN ASYLUM v. UNITED STATES FIDELITY & GUARANTY CO.**

No. 10522.

United States Court of Appeals District of Columbia Circuit.

Decided March 15, 1951.

Bernard I. Nordlinger, Washington, D. C., with whom Milton W. King, Wallace Luchs, Jr. and Ellis B. Miller, all of Washington, D. C., were on the brief for appellant.

Thomas S. Jackson, Washington, D. C., with whom Louis M. Denit, A. Leckie Cox and P. Baxter Davis, all of Washington, D. C., were on the brief, for appellee.

Before CLARK, BAZELON, and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The questions here presented, relative to the coverage of a standard form of surety bond, have frequently been considered in other jurisdictions, but apparently never before by this court. Is liability to be limited to the amount stated in the bond, in respect of a named employee, regardless of the number of years that the bond has been in effect? Or is liability to be imposed, up to the stated amount, for each year of coverage in which the named employee has caused a loss?

In March 1942 the surety company (defendant-appellee) issued a so-called Blanket Position Bond in favor of plaintiff-appellant. In the opening sentence of the bond the defendant agreed, "in consideration of an annual premium," to indemnify the insured against loss through embezzlement or the like, the amount of indemnity as to each named employee being stated as $2500 (later amended to $5000 in respect of insured's bookkeeper) "during the term of this bond as defined in paragraph 1."

The Blanket Position Bond then went on to provide, in part:

"Term of Bond

"1—That the term of this bond begins with the *17th day of March, 1942,* standard time at the address of the Insured above given, and ends at 12 o'clock night, standard time as aforesaid, on the effective date of the cancellation of this bond; and *the payment of annual premiums during such term shall not render the amount of this bond cumulative from year to year."* (Emphasis added, as to concluding phrase).

The insured was billed for the bond by an insurance agency on a year-to-year basis, until in March 1946 it was billed for two and one-half times the customary amount. In a letter dated March 5, 1946, to the insured, accompanying the bill, the insurance agency said, in part:

"We take pleasure in enclosing herewith Rider to be attached to the above captioned bond extending the term for three years from the renewal date, March 17, 1946. By writing the bond for three years, there is a savings of one-half years premium. * * *"

The rider referred to in the foregoing letter, which by its terms was to be "attached to and form a part of" the Blanket Position Bond, provided, in pertinent part, that the bond should be amended:

"(a) By substituting for the words 'annual premium' or 'annual premiums,' wherever they may occur, the words 'agreed premium' or 'agreed premiums,' as the case may be.

"(b) By substituting the words 'premium period' for the words 'premium year,' if and wherever the latter may occur (except where they may occur in connection with merger or combination with the Insured of another institution).

"(c) By deleting any provision which may now be contained therein for the payment of a restoration or reinstatement premium.

"(d) By substituting the word 'periods' for the word 'years' in the reference, if any, to the number of years the attached bond is or shall continue in force."

On December 14, 1948, the insured discovered that its bookkeeper had embezzled its funds, over a period of years, in the following amounts:

| | |
|---|---|
| During the year 1945 .. | $ 5,498.32 |
| During the year 1946 .. | 3,975.47 |
| During the year 1947 .. | 13,281.45 |
| During the year 1948 .. | 17,555.90 |

The insured demanded payment under the bond of a total of $18,975.47, representing $5000 for each of the years 1945, 1947, and 1948, plus $3975.47 for the year 1946. The defendant · surety company admitted liability of $5000, and no more. The insured thereupon brought suit in the United States District Court for the District of Columbia, alleging liability of $18,975.47. Defendant answered, denying liability in excess of $5000. Plaintiff then filed a motion for summary judgment for the admitted part of defendant's liability ($5000). The surety company thereupon filed a cross motion for summary judgment, to the effect that plaintiff was entitled to receive

only the sum of $5000. The insured filed an affidavit in opposition to the defendant's motion. The District Court, after consideration of both motions, and after hearing argument, granted the defendant's motion for summary judgment, limiting liability to $5000. It is from this judgment that appeal is taken.

The appellant-insured argues (1) that the defendant is liable in the maximum sum of $5000 for each twelve months period during the time of coverage, in respect of the actions of the insured's bookkeeper; (2) if defendant's liability is held to be exhausted by indemnifying the loss suffered in 1945 (up to $5000), then plaintiff has received no protection for the period 1946 to 1949 and is entitled to the return of its last premium; and (3) "There was of record a genuine issue of material fact with respect to whether the premium bills and other documents sent to plaintiff by defendant established separate and distinct contracts for the term of each renewal period, with a maximum liability of $27,500."

The Blanket Position Bond here in question contemplates a measure of liability with respect to named employees occupying stated positions, this measure of liability to be applicable "during the term" of the bond. The "term" is defined simply as a period beginning on March 17, 1942, and ending on the effective date of the cancellation of the bond. Such cancellation is provided for in two paragraphs, one dealing with cancellation of the bond in its entirety upon the effective date specified in a notice to be served by either party upon the other, and the other providing for cancellation as to a particular employee immediately upon discovery by the insured of any fraudulent or dishonest act on the part of such employee. The bond as originally written contemplated the payment of an annual premium. It was, however, modified by the rider attached pursuant to the letter of March 5, 1946, and all mention of annual premiums was deleted, the phrase "agreed premiums" being inserted. After giving effect to the rider, therefore, nothing remains on the face of the bond to indicate that there is in any sense to be an annual term or an annual measure of liability; the bond would then provide "the payment of agreed [formerly, annual] premiums during * * * [the] term shall not render the amount of this bond cumulative from year to year."

What meaning is to be ascribed to the phrase "cumulative from year to year"? The plaintiff-appellant argues that this provision simply means that there shall be no carry-over of coverage, to use up unobligated amounts. For example, if the bond remained in effect for four years, plaintiff would agree that a loss of $20,000 occurring solely in any one year could not be fully and entirely compensated, and that recovery would be limited to the amount of $5000 for that year. Plaintiff contends, however, that if in the example just given a loss of $5000 or less occurred in *each* (or any) of the four years involved, each such loss should be indemnified even though the total recovery under the bond would come to as much as $20,000.[1]

Appellant further argues that if it must pay an annual premium (or a premium covering a stated number of years) and must still be limited to the amount stated in the bond in respect of each named employee, it is making a payment without any compensatory return, and if a loss in fact occurs during the first year without being discovered the insured is placed in

---

1. Speaking of its present claims, plaintiff-appellant argues:

"Plaintiff's losses were thus not 'cumulative.' They were distinct losses, for distinct periods and accrued while the insurance was in force. The loss for 1946 was not superadded to the loss for 1945. The 1945 loss was one thing; the 1946, 1947 and 1948 losses were not successive additions to the 1945 loss; they were successive losses to the extent that they occurred in successive years, but they were separate and distinct from any prior loss. The liability of the defendant for the loss in 1945 ended on March 17, 1946. A new liability commenced at the expiration of that term and continued during the next term. Plaintiff has not thrown its losses into a heap. It has not formed a mass of losses. It has demanded specific insurance for each specific loss during a definite, specific period."

the position of continuing to pay premiums in subsequent years without any possibility of receiving coverage or benefit.

The surety company contends that it remains liable throughout the entire term of the bond (whether for one year or for many years as the result of renewal); that the insured need not prove that the loss took place in any particular year so long as he can establish that it was within the time the bond was in effect; that the surety company will be liable for a total of $5000 in respect to the actions of the insured's bookkeeper, even though this total is reached by adding amounts spread over a number of years. It further argues that if the insured took out a new bond each year instead of renewing the old bond, the insured would have to prove the exact time when a particular loss occurred so as to place it under the coverage of a bond issued for a specified year. Further, under the terms of the bond here in question, the insured is allowed two years after the cancellation of the bond in which to discover and report a loss. If it obtained a new bond each year, it might fail to recover altogether if it did not discover and report the loss under a particular bond within the two-year period immediately following. In contrast, under the present type of bond, as renewed from year to year, the requirement of discovering and reporting losses is extended when the bond is renewed, and the two-year period for the discovery and reporting of losses follows the total period (of, let us say, ten years) during which the bond has been in effect.

These arguments, pro and con, have been made over the years in a long series of cases arising in respect of surety bonds. See Annotation, 7 A.L.R.2d 946; Note, 27 Mich.L.Rev. 442; 6 Couch, Cyclopedia of Insurance Law, § 1374. We need not enter upon a lengthy analysis of these decisions. The weight of authority is in favor of the surety companies, even where there has been no specific contract provision against cumulation of liability. It has generally been held that "where the bond is for an indefinite term, the date it begins to run being the only date given, the fact that the premiums were paid annually does not make the relation a series of separate yearly contracts." Brulatour v. Aetna Casualty & Surety Co., 2 Cir., 80 F.2d 834, 836. Accordingly, even in the absence of a specific provision against cumulative liability, it has been held that the continuous term of the bond impliedly excluded liability in excess of the amount stated in the bond, in spite of the extent of actual losses over the years. Montgomery Ward & Co. v. Fidelity & Deposit Co., 7 Cir., 162 F.2d 264; Leonard v. Aetna Casualty & Surety Co., 4 Cir., 80 F.2d 205.[2] Where, as here, in addition to the continuous term of the bond, there was language in the bond or its attachments which militated against a finding of cumulative liability, the courts have consistently held liability to be limited, in the aggregate, to the amount stated in the bond (i. e., non-cumulative). United States Fidelity & Guaranty Co. v. Barber, 6 Cir., 70 F.2d 220; Brulatour v. Ætna Casualty & Surety Co., supra; Hack v. American Surety Co. of New York, 7 Cir., 96 F.2d 939.

It was recognized in these decisions that the issue presented was one of construing the contract, and that a clear limitation on liability stated in the bond would be enforced. Apparently the surety companies have of late years taken more pains to clarify their policies. The clause providing that "payment of * * * premiums * * * shall not render the amount of this bond cumulative from year to year" is one which did not appear in the policies construed in the cases just cited; it would seem to be a recent concession to the need for specificity. It is in the very language long used by the cases in discussing the problem here involved, and was evidently inserted in an effort to obviate the diffi-

2. To the contrary effect were Aetna Casualty & Surety Co. v. Commercial State Bank, D.C., 13 F.2d 474, reversed on other grounds, 7 Cir., 19 F.2d 969, and Bailen v. Deitrick, 1 Cir., 84 F.2d 375, distinguished in Aetna Casualty & Surety Co. v. First Nat. Bank, 3 Cir., 103 F.2d 977.

culties which resulted when bonds were more ambiguously phrased.

In the present case there is the further fact that the 1942 Blanket Position Bond was preceded by a so-called Position Schedule Bond, issued by the defendant company to the plaintiff on (or as of) March 17, 1941. This earlier bond was canceled, upon the issuance of the Blanket Bond, by a document described as a Superseded Suretyship Rider, which was attached to and made a part of the (new) Blanket Bond. This Rider was dated March 5, 1942, and provided, in part:

"Whereas, said fidelity suretyship [i. e., the Position Schedule Bond] may provide that any loss thereunder shall be discovered, or claim thereunder shall be filed, within a specified period after the cancellation, expiration or termination thereof; and

"Whereas, *it is desired that continuity of protection be given and the Underwriter is willing to grant same upon the condition that liability under said fidelity suretyship and the attached bond shall not be cumulative in amounts.*

"Now, Therefore, in consideration of the premium charged for the attached bond it is hereby understood and agreed as follows:

\* \* \* \* \* \*

"3—That *the liability of the Underwriter under the attached bond* for losses thereunder and under the attached bond as extended by this rider for losses under said fidelity suretyship, *shall, in no event, exceed in the aggregate the amount carried under the attached bond*, at the time the attached bond becomes effective, *on the Employee causing such losses.*

"4—That *liability* under said fidelity suretyship on account of losses thereunder caused by any Employee and *under the attached bond* on account of losses thereunder caused by such Employee *shall not be cumulative.*" (Emphasis supplied).

█ We thus have in this case (1) a provision establishing a continuing term,

rather than an annual one, (2) an express provision against cumulation, and (3) a rider, incorporated in the new bond, which endeavored to say in several different ways that neither the old nor the new bond should create cumulative liability beyond the basic amount fixed in respect of each named employee.[3]

In view of these contract provisions, we find no basis for construing the bond to reach the result urged by the plaintiff-appellant. Similar clauses were present in the policy involved in New York Casualty Co. v. Ford, 5 Cir., 1944, 145 F.2d 599, 602; the court held in that case that there was no room for construction, and that the insurer could not be made liable "on account of any one employee for more in the aggregate than the amount carried in the bond on such employee, which was $2500."

We are cited to United States v. American Surety Co. of New York, 2 Cir., 172 F.2d 135, 138, recently decided by the Second Circuit. Certiorari denied, 337 U.S. 930, 69 S.Ct. 1494, 93 L.Ed. 1737. That decision, which was by a divided court, dealt with a type of bond required by an act of Congress, and does not appear pertinent here. The majority opinion recognizes that non-cumulative liability (i. e., liability limited in the manner for which the surety company here contends) can be provided for by express language, and goes on to say:

"Turning to the cases, those which contain language rather clearly negativing cumulative liability are not in point. Thus in Hack v. American Surety Co. of New York, 7 Cir., 96 F.2d 939, 948, certiorari denied 305 U.S. 631, 59 S.Ct. 95, 83 L.Ed. 405, the bond declared that 'in no event' should the surety's aggregate liability for any one or more defaults of the principal during any one or more years exceed the amount stated in the bond. In Aetna Casualty & Surety Co. v. First Nat. Bank of Weatherly, Pa., 3 Cir., 103 F.2d 977, the surety's liability was to 'continue in the amounts scheduled' until the insurance

---

3. Riders of this sort are not to be ignored in reaching a proper construction of the bond. Brulatour v. Aetna Casualty & Surety Co., 2 Cir., 80 F.2d 834, 836.

was terminated. In Leonard v. Aetna Casualty & Surety Co., supra, the surety was liable only for losses discovered within two years after the termination of the bond, thus showing an intent against cumulative responsibility. In Brulatour v. Aetna Casualty & Surety Co., 2 Cir., 80 F.2d 834, there was evidence in the subsequent actions of the parties that they regarded the liability as continuous, and when one of the annual schedules filed with the bond explicitly provided that the renewal premium would not create cumulative liability, the obligee voiced no objection. None of these cases is thus particularly helpful." 172 F.2d 135, 138.

The cases cited in the passage quoted are those which we think controlling here. And in fact we have found no case in any jurisdiction which has allowed recovery in the face of contractual provisions as direct and positive as those here presented.

■ Apart from the construction of the provisions of the bond and attached riders, themselves, appellant claims summary judgment was improper because the record shows a genuine issue of material fact, namely, that the premium bills and connected correspondence "established separate and distinct contracts for the term of each renewal period, with a maximum liability of $27,500." (Appellant's Brief, p. 5) But these bills were rendered by a general insurance agency, evidently on a routine billing form, and the fact that the description of the "policy" as typed on the bill showed its "term" to be "1 year," or in one instance "3 years," could hardly overcome the agreed provisions of the bond and its attachments. The connected correspondence was in routine form, and

no representations were made by the insurance agency on the points here at issue. The most lengthy letter was that of March 5, 1946, quoted in the opening portion of this opinion; it spoke of "extending the term" of the 1942 bond. That expression hardly helps the plaintiff. The affidavit offered on behalf of the plaintiff-insured simply attached these bills and connected correspondence and made them a part of the affidavit, with the statement that the insurance agency was the "agent of the defendant." No allegation was made in the affidavit that these attachments changed the terms of the bond itself, or were accompanied by any oral representations by the defendant or the insurance agency. No allegation was made that the plaintiff had a different understanding of the terms of the bond, at the time of its execution, than would be indicated by a fair reading of the document. Under these circumstances, there is no genuine issue of material fact, but simply a question of law for the court. We think that the District Court properly decided that question.[4]

■ Policies or bonds such as the one here in issue may seem one-sided, and harsh upon the insured. Were there any ambiguity in the language, a construction imposing cumulative liability might have some basis. But, where the language is clear, in the absence of misrepresentation, the courts are not free to rewrite a commercial contract entered into at arm's length by fully competent parties. We cannot give the insured a new bond, different from the one he bought and paid for, and carrying greatly extended coverage.[5] Perhaps such litigation as the instant case will serve as an admonition to

---

4. With reference to a similar point, the Third Circuit has said:
   "These bills were not upon the stationery of the appellant [surety Company] nor prepared by it, but even had they been prepared by the appellant and sent by the appellant to the appellee, we would still be of the opinion that the terms of the bond, unequivocal in their nature, would remain unimpaired except by such acts of the parties as would have constituted a novation.

"We are therefore concerned with construing the terms of the bond itself and the schedule which by specific reference is incorporated as a part of the bond." Biggs, Circuit Judge, in Aetna Casualty & Surety Co. v. First National Bank, 103 F.2d 977, 978.

5. Said the Supreme Court in Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 352, 78 L.Ed. 711, through Chief Justice Hughes:
   "As there is no ambiguity in the pro-

purchasers of insurance to read their contracts carefully and to seek expert advice with regard to the scope of coverage. It may then appear that additional coverage is obtainable upon payment of higher premiums. Just as we are not free to rewrite the bond in a case such as this, we cannot attempt to require that any part of the premium be returned to the plaintiff. The premium charged covered a number of employees, and extended at least some measure of protection in respect of each member of the entire group. Even if we could break down the premium to ascertain the amount chargeable to coverage of a particular employee, still we would not find such a failure of consideration as would entitle the insured to full or partial return of the premium.[6] The bargained protection, such as it was, has at all events been given.

The judgment of the District Court must be

Affirmed.

CLARK, Circuit Judge (dissenting).

I regret that I cannot agree with my distinguished colleagues as to this case.

The facts are simple. Appellee had bonded the employees under a blanket position bond. The maximum indemnity under the bond was $5000.00. From 1942 through 1946 this bond was renewed from year to year *by bill for renewal of bond* for one year which so stated. In 1946 the bond was renewed for three years to 1949.

At the end of 1948 appellant discovered that its bookkeeper had embezzled the following sums in the following years:

| | |
|---|---|
| 1945 | $ 5,498.32 |
| 1946 | 3,975.47 |
| 1947 | 13,281.45 |
| 1948 | 17,555.90 |

Appellant filed suit against appellee for $18,975.47 or $5000.00 per year the maximum coverage for 1945, 1947 and 1948 and for $3,975.47 for 1946. Appellee admitted liability for $5000.00 and plaintiff received judgment for that amount, but judgment was granted in favor of appellee on the amount in excess of $5000.00 From that this appeal is taken.

This is apparently a case of first instance in this jurisdiction. Courts in other jurisdictions, including many Federal Courts and many respectable state courts, have been in violent disagreement. Some courts have held that a renewal bond is a continous liability limited to the provisions of the original bond. This theory would limit the entire amount ever to be recovered under the bond, even if premiums were paid for twenty-five years or longer to $5,000.00 all told. It overlooks the salient fact of the improbability that any one except a congenital idiot would be likely to go on paying premiums on an extinct bond from which there was no possibility of protection in the future. But many courts, certainly with an equal weight of authority, have taken the view that a renewal of a bond is a separate and distinct contract for each renewal period and that the surety is liable for losses occurring in each renewal period.

The opinion of the majority of this court as I understand their contention is that under the bond all right to indemnity was exhausted in 1945 but that the bonding company was within its rights in going right ahead billing and collecting for periods in which absolutely no protection was afforded. With this view I completely disagree. I regard such conduct on the part of the surety as common thievery. Great stress is laid by the majority on the provision in the bond that "the payment of

visions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

6. Cf. Hack v. American Surety Co., 96 F. 939, 947, certiorari denied 305 U.S. 631, 59 S.Ct. 95, 83 L.Ed. 405.

annual premiums during such terms shall not render the amount of this bond cumulative from year to year."

This term is certainly ambiguous. It might mean, as the bonding company contends, that one indemnity of $5000.00 is all that can ever be paid under this bond or any renewal of it.

The far more reasonable construction is that it simply means that the coverage on years when no loss was suffered cannot be carried over to cover losses in a subsequent year when losses were in excess of $5000.00.

The mere fact that judges of the courts of the United States and various State Courts have so sharply differed as to the construction to be placed upon this language, and similar language, and the further fact that the judges of this court differ widely in their views is strong evidence of its ambiguity.

This bond was drawn up by the bonding company and its lawyers. It is a universally recognized rule that wherever ambiguity appears in a contract it must be construed most strongly against the party who drew it and in favor of the party who did not draw it. I think the judgment of the District Court should be reversed outright.