THE NATIONAL BANK OF NORTH HUDSON, AT UNION CITY, APPELLANT, v. NATIONAL SURETY COMPANY, RESPONDENT.

Submitted October 26, 1928—Decided February 4, 1929.

For the respondent, *William L. Rae.*

For the appellant, *Isaacs & Gunther* and *Julius Lichtenstein.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The Supreme Court entered judgment upon the order of the Hon. Henry E. Ackerson, the Supreme Court commissioner, who heard the motion to strike out the complaint, reached the conclusion that it should be granted, and entered an order that the complaint be struck out with costs, and that plaintiff-appellant have ten days in which to file an amended complaint, if it desired so to do; but, instead, it appealed from the judgment after the expiration of the ten days. There is but one question presented by this record, and that is, whether the bond of indemnity in question was a single one limiting the defendant's liability to $100,000, or was, in effect, a new bond given each year upon the payment of additional annual premiums, answerable for defalcations occurring within each particular year.

Counsel for plaintiff-appellant urges that the bond of a surety company insuring a bank against fraud or dishonesty of a cashier, if susceptible of two constructions, one favorable to the bank and the other favorable to the insurance company, will be given a construction most favorable to the bank, if it was prepared by the surety company. This is inapplicable, because here no two such constructions may be given to the contract; it is susceptible of but one, and that favorable to the defendant-respondent. The plaintiff-appellant also contends that a bond which by the payment of premiums for one year is kept in force by renewal from year to year, is, in effect, a separate contract for each year of renewal, and binds the surety company to indemnify for losses in any one of such years; but, in this case the bond was not for one year with privilege of renewal, but was one entire bond for such

term as it should be continued by the payment of annual premiums. This appears plainly from what it says, namely, that in consideration of the premium of $812.50 the bond was to run "for a period of one year from the date thereof and of subsequent annual premiums," &c. While the general rule may be that a *renewal* of a fiduciary policy or bond constitutes a separate and distinct contract for the period of time covered by such renewal, here the bond by its terms was not renewable but was written for an indefinite period, subject to the payment of annual premiums, as is an ordinary life insurance policy.

Stress is laid by counsel for plaintiff-appellant upon the case of *Aetna Casualty Surety Co.* v. *Commercial Bank,* 13 *Fed. Rep.* (*2d Series*) 474. In that case the bond provided that in consideration of an annual premium the plaintiff was bound to pay defendant such pecuniary losses as it should sustain of money or other personal property, through the fraud, dishonesty, theft, embezzlement, &c., of any dishonest or criminal act or omission of the cashier. The bond expressed a penalty of $10,000. And it was held that "the court prefers to find as he believes the facts clearly indicate, that each year's premium was to buy one year's insurance of $10,000. There is no fact or circumstances warranting a finding that the parties intended that the first year's premium bought insurance of $10,000 but that the three year's premiums bought insurance of only $3,333.33 per year," and, further, "courts in which an opposite conclusion has been reached have grounded their decisions upon a finding that the parties by their contract evidenced an intention to restrict the liability to one penalty without regard to the number of premiums paid. The court has discovered nothing in this record to warrant such finding." Now, this court is in accord with those tribunals which have reached a conclusion that bonds like the one in this case come within the doctrine just quoted in the opinion in Aetna Casualty Surety Company v. Commercial Bank. In our judgment the parties to the bond before this court have evinced an intention to restrict the liability of the contract to one penalty without regard to the number of premiums paid.

On November 9th, 1916, the defendant-respondent issued to the plaintiff-appellant a blanket bond by way of protection against dishonesty on all the employes of the bank, the material provisions of which are as follows:

"In consideration of the premium of eight hundred twelve and 50/100 [$812.50] dollars paid by the National Bank of North Hudson, West Hoboken, New Jersey, hereinafter referred to as the insured, to the National Surety Company, hereinafter referred to as the underwriter, for a period of one year from the date hereof, and of subsequent annual premiums, each premium being based upon the total number of insured's officers, clerks and other employes, employed at the insured's offices covering hereunder at the beginning of the year for which such premium is paid [all the officers, clerks and other employes employed at the offices covered hereunder during the currency of this bond being hereinafter referred to as employes], the underwriter hereby undertakes and agrees to indemnify the insured and hold it harmless from and against any loss to an amount not exceeding one hundred thousand [$100,000] dollars of money, currency, bullion, bonds, debentures, scrip, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar securities, hereinafter referred to as property, in which the insured has a pecuniary interest or for which it is legally liable, sustained by the insured subsequent to noon of the date hereof and while this bond is in force and discovered by the insured subsequent to noon of the date hereof and prior to the expiration of twelve months after the termination of this bond as provided in condition II.

"This bond shall terminate—[a] thirty days after the receipt by the insured of a written notice from the underwriter of its desire to terminate this bond, or [b] upon the receipt by the underwriter of a written request from the insured to terminate this bond. This bond shall terminate as to any employe—[a] as soon as the insured shall learn of any default hereunder committed by such employe, or [b] fifteen days after the receipt by the insured of a written notice from the underwriter of its desire to terminate this bond as to such employe."

This bond was issued November 9th, 1916, and was continued in force until the 9th day of November, 1926. It was terminable by the giving of certain notice by one party to the other, or knowledge of certain facts acquired by the insured, according to its terms. It provided the payment of a first and subsequent annual premiums, but their payment was not made a condition to the attaching or continuing of the contract. During the currency or running of this bond and between the years 1921 and the 22d day of July, 1926, three employes of the plaintiff-appellant were dishonest, and stole and embezzled from the plaintiff-appellant the sum of $235,483.02. The defendant-respondent was advised of the defalcations, then known to aggregate upwards of $109,000, and on July 31st, 1926, the defendant-respondent paid to the plaintiff-appellant the sum of $100,000. Thereafter and subsequent to July 31st, 1926, the plaintiff-appellant discovered the additional losses aggregating $126,000 in excess of the sum of $109,000. One of the fraudulent employes of the bank repaid the sum of $50,000, and the plaintiff-appellant demanded a further sum of $85,483 to cover the balance of the defalcation. This was refused; hence this suit.

The defendant-respondent's position is that the bond issued on November 9th, 1916, was a continuous one in the sum of $100,000 running for an indefinite period and the obligor's maximum liability for the period from November 9th, 1916, to November 9th, 1926, was $100,000 and that the payment by it to the bank of that sum was a complete liquidation of any indebtedness upon the part of the defendant-respondent. And this is correct.

In *Fourth and First Bank and Trust Co.* v. *Fidelity and Deposit Co.*, 153 *Tenn.* 176, the court quoted from the Supreme Court of Michigan in *Ladies Modern Maccabees* v. *Illinois Surety Co.*, 163 *N. W. Rep.* 7; 196 *Mich.* 27, that under the stipulation of the bond in that case the renewal did not automatically take place, as the plaintiff had to apply for, and the defendant accept, a continuance of the obligation, that when the plaintiff applied for, and the defendant accepted the application, both parties became bound for a new term: it was a new contract, its conditions were the same as the

original, but it covered a new period, was for a new consideration and sprang into existence by the affirmative action of both parties; that no affirmative action was required by either party to the Tennessee court to continue it for the first year or for any other year; that the original obligation was not limited to a year. And the Tennessee court said that it was claimed that the defalcations of the three previous years in their aggregate exceeded $50,000 (the penalty of the bond), that the bank had paid for coverage for these years, and that for the last year it got no recovery at all, if the premiums paid were limited to a total recovery of $50,000; but, that that argument ignored the feature of the bond that, as in a life policy, "the whole premiums are balanced against the whole insurance;" that it was not paying something for nothing in the last year, even though it had developed that the first years' losses absorbed the entire penalty of the bond, that on the contrary in 1923 it was paying for past protection as well as current and future protection.

In *Roseville Trust Company* v. *National Surety Co.*, 95 *N. J. L.* 138, this court had under consideration two appeals, one by the defendant from a judgment against it on a bond of indemnity to make good and reimburse the employer (Roseville Trust Company) for all pecuniary losses by or through the personal dishonesty, amounting to larceny or embezzlement, of the secretary and treasurer of the Roseville Trust Company; and the other appeal by the plaintiff challenging the action of the trial court in limiting the recovery to the amount of the bond. This court concluded that, as the plaintiff was not entitled to recover anything, it was not necessary to consider its appeal from the action of the trial court limiting the right of recovery to the penalty of the bond, because the plaintiff, not being entitled to recover at all, was not aggrieved by the action of the trial court. The judge at circuit limited the right of recovery to the penalty of the bond, which appears to have been correct. And this court said (at *p.* 140) : "In 1912 the surety company by its writing, in consideration of the payment of the annual premium charge each year, continued in force the original bond, for an indefinite term so as to cover, according to its terms and con-

ditions, any of said acts or defaults by Smith committed after the date of the execution of the original bond and before its termination as provided therein." This is a recognition of the doctrine enunciated in *Fourth and First Bank and Trust Co.* v. *Fidelity and Deposit Co., supra,* and is in accordance with the view entertained by this court of the contract of indemnity under consideration in the case *sub judice.*

The result reached is that the bond constituted an entire contract, with liability limited to its penalty; and that the order striking out the complaint must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, KALISCH, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, HETFIELD, DEAR, JJ. 13.

*For reversal*—None.