MONTGOMERY WARD & CO., Inc., v. FI-
DELITY & DEPOSIT CO. OF MARY-
LAND.

FIDELITY & DEPOSIT CO. OF MARY-
LAND v. MONTGOMERY WARD &
CO., Inc., et al.

No. 43C1105.

District Court, N. D. Illinois.

Feb. 26, 1946.

Winston, Strawn & Shaw, John R. Nich-olson, Fred Barrett, and Ernest V. Keyes, all of Chicago, Ill., for plaintiff.

Dent, Weichelt & Hampton, of Chicago, Ill., for defendant Fidelity & Deposit Co.

SULLIVAN, District Judge.

Pursuant to the provisions of Rule 16 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, various pretrial conferences were held in this case on June 13, 1945, June 22, 1945, and June 29, 1945, at which times certain facts were stipulated. It was also agreed by the parties that the two preliminary issues presented in this case are: first, the issue as to the amount of the maximum liability of Fidelity and Deposit Company of Maryland upon the bond or bonds in suit; and, second, the issue as to the status and rights of Pinker-ton's National Detective Agency, Inc., by virtue of the judgment recovered by it on October 25, 1943, in the Circuit Court of Appeals, in Appeal No. 8250. The court thereupon ordered that these two issues be segregated from all other issues in the case and tried separately, and that the pretrial conferences with respect to all the remain-

ing issues in the case be continued until the two above issues have been disposed of.

The case is now before me on the pleadings and stipulation of facts with reference to these two issues.

September 1, 1935, Lawrence J. O'Connell, as principal, and Fidelity & Deposit Company of Maryland, as surety, executed their bond running to the People of the State of Illinois in the penal sum of $20,000. This bond provided that if O'Connell should faithfully perform his duties as Security Examiner for the Industrial Commission of Illinois, and pay over all monies to the parties entitled thereto, and account for all property coming into his hands by virtue of his office, then this obligation to be void. The bond bore on the back thereof the notation "Dated September 1, 1935. Expires September 1, 1936."

That annually on or about September 1st, beginning as of September 1, 1935, and ending September 1, 1940, Horan & O'Brien, agents for the Fidelity & Deposit Company, submitted to the People of the State of Illinois bills for annual premiums in the amount of $50 each, except that on November 26, 1941, Fidelity submitted a bill for premium from September 1, 1941, to September 29, 1941, only. That upon receipt of the annual bills, the Auditor of Public Accounts of Illinois prepared a voucher therefor and issued a state warrant in the sum of $50, which was paid in due course.

On February 4, 1935, Montgomery Ward & Company entered into a deposit agreement with the Industrial Commission relating to United States Treasury Bond No. 27265 for $10,000 with annual interest at 3¼%, and deposited the same, together with the attached interest coupons, with one Lawrence J. O'Connell, Chief Security Examiner, as security for the performance by Ward of its obligations under the Illinois Workmen's Compensation Act. Smith-Hurd Stats.Ill. c. 48, § 138 et seq.

In 1939 O'Connell sold and converted said bond to his own personal use, Ward learning of this conversion in 1942 when it requested the return of the Treasury bond and received neither the bond nor the proceeds thereof. Various other of the cross-defendants, including Coach Corporation of Freeport, deposited money or securities with O'Connell, Chief Security Examiner, in the approximate aggregate amount of $50,000 which O'Connell converted to his own use.

On November 17, 1943, Ward filed a suit in this court against the Fidelity & Deposit Company seeking to recover for the loss sustained by it because of deposit of its United States Treasury bond with O'Connell, Chief Security Examiner, and O'Connell's conversion of same.

On December 13, 1943, Fidelity & Deposit Company filed therein its answer and cross-complaint in the nature of a bill of interpleader, together with its bond in the sum of $20,000, naming as cross-defendants the Pinkerton Detective Agency, Montgomery Ward & Company, and all other persons who had made similar deposits with O'Connell. Various of the cross-defendants filed answers in the suit, together with motions to dismiss the cross-complaint, which motions to dismiss were subsequently denied. On March 8, 1944, Fidelity & Deposit Company filed its motion for an injunction pendente lite, which motion was allowed, and is now in force, pending determination by the court of further issues in the case. The first issue to be determined is on the maximum liability of Fidelity & Deposit Company on the surety bond in question.

It is admitted that there is a contrariety of opinion on the question of whether the payment of annual premiums on a fidelity bond creates a new and distinct liability each year, or whether such a bond is a continuing contract on which there is no cumulative liability, the surety assuming liability in the aggregate only to the amount set out in the bond. Ward and Coach, cross-defendants, contend that Fidelity & Deposit Company's liability in the instant case is not limited to $20,000, but is multiple for the period beginning September 1, 1935, and continuing to September 29, 1941, the date when O'Connell resigned and his bond was cancelled. That since there was no express provision to the contrary either in the original bond or in the successive yearly payments of premium, that each such yearly renewal by payment of premi-

um constituted a new contract which created a separate and cumulative liability in the full amount of the bond for each such period of time covered by the payment of each premium. Fidelity on the other hand insists that the bond is dated September 1, 1935, without any specific date of termination, and therefore the payment of annual premiums thereon merely had the effect of continuing the bond in force for the additional year for which the premium was paid, the maximum liability thereon for the entire series of transactions being limited to $20,000, which Fidelity promised to pay upon O'Connell's default.

In Ætna Casualty & Surety Co. v. First Nat. Bank, 3 Cir., 103 F.2d 977, 978, suit was brought on a schedule bond under which a bank cashier was covered for $15,000. The bond did not specify any expiration date, being issued to continue "until the termination of this insurance" and providing that it should terminate upon notice by either the company or the bank, or, as to individual employees, upon retirement from the employ of the bank or discovery by the bank of loss through the employee. The bond contained the statement that the cashier was covered for $15,000, but the bank sought to recover $45,600. The court stated the question presented by the appeal to be: "Does the bond create as to any employee covered by it a single and continuous liability limited by the amount specified as the coverage upon each employee without regard to the length of time the bond is in force, or does it create a separate and distinct liability for each successive period of twelve months during the time of the coverage?" The court held that the liability on the bond was single and continuous, and reversed a judgment allowing cumulative recovery, saying: "Upon its face the bond represents a continuous and continuing liability upon the part of the appellant which could be terminated only as provided by the fourth clause of the bond. The schedule shows the amount of insurance carried in respect to Trezise as $15,000. This represents the maximum amount of the appellant's liability in respect to the employee named. There is not a word or a phrase in the bond which indicates the creation of successive periods of liability on the part

of appellant. The construction contended for by the appellee cannot be maintained in view of that phrase of the bond which provides that appellant binds itself to pay to the appellee any loss sustained by the appellee due to the dishonesty of an employee '* * * listed in the schedule forming part of this bond * * * during the period commencing upon the date each employe is listed * * * and continuing in amounts scheduled until the termination of this insurance.' These words serve to limit the liability of the appellant to the sum of $15,000 for the embezzlements of Trezise for the 'period' commencing with the effective date of Trezise's addition to the bond schedule under the change of notice and ending with the termination of the insurance."

In Leonard v. Ætna Casualty & Surety Co., 4 Cir., 80 F.2d 205, 206, suit was brought upon a fiduciary bond of indefinite duration, dated October 23, 1925, whereby Speigner, as principal, and defendant as surety, acknowledged themselves bound to a bank in the sum of $2,500, and promised, in consideration of an annual premium to be paid by the bank, to pay to the bank such loss as the bank might sustain through Speigner's fraud or dishonesty. The bond contained no specific provision against cumulative liability other than the statement of the specific amount for which defendant bound itself. The bank paid annual premiums from 1925 to 1933, inclusive. From August 17, 1930, to January 17, 1933, the bank sustained annual losses in excess of $2,500 by reason of Speigner's fraudulent acts. Plaintiff, receiver of the obligee bank, contended that upon the payment of each annual premium a new contract arose so that the liability of the surety was cumulative. The trial court held that the bond constituted only one continuous contract and limited the total liability of the surety to $2,500. In affirming the trial court, the Circuit Court of Appeals said:

"The question at issue is to be decided by determining whether the parties contemplated a single continuous contract covering the entire period, or a series of independent contracts, each for the period of one year; and the solution necessarily depends upon the terms of the bond. It

will be noticed in the first place that the instrument did not specify a definitely limited period terminating on a certain date, with the privilege of renewal, but covered the period commencing on August 17, 1925, and continuing until the suretyship was terminated by affirmative action, that is, by notice of termination by one of the parties to the contract, by retirement of the employee from the service, or by the discovery of loss. Secondly, no additional agreement was needed to extend the period of the coverage of the bond. It is true that an annual premium was to be paid by the bank, but this provision did not limit the period of the contract; it merely described the consideration running to the surety. There was no requirement for the renewal of the bond upon payment of the annual amount, and no stipulation that liability should cease if the annual premium should not be paid. * * *

"These terms and conditions of the bond lead us to the conclusion that only one contract was effected by the parties to this cause, and that the decision of the District Judge that the surety was liable for only $2,500 should be sustained. Similar conclusions have been reached in a number of well-considered opinions, e.g., Fourth & First Bank & Trust Co. v. Fidelity & Deposit Co., 153 Tenn. 176, 281 S.W. 785, 45 A.L.R. 610; National Bank [of North Hudson] v. National Surety Co., 105 N.J.L. 330, 144 A. 576; Green v. United States Fidelity & Guar. Co., 135 Tenn. 117, 185 S. W. 726. They point out that such bond as that now under discussion is not made for one year with the privilege of renewal annually, but one entire bond for an indefinite period, or for such period as it should be continued by payment of an annual premium like an ordinary life insurance policy; that no additional action of the parties is necessary to keep the contract in force, and it is not necessary to make a new contract each year; and moreover, that bonds of this sort extend the time for discovery of loss and remove the difficulty experienced by the obligee in many cases of proving when a defalcation occurred and against what period of contract it should be charged. It may be that the last-mentioned benefit is not so valuable to the assured as

the right to collect the amount of the bond for each of the years in which a defalcation occurs, as is strongly urged in Ætna Cas. & Surety Co. v. Commercial State Bank, D.C., 13 F.2d 474 (reversed on other grounds in 7 Cir., 19 F.2d 969); but it is for the parties and not for the court to agree upon the obligations by which they are to be bound."

Brulatour v. Ætna Casualty & Surety Co., 2 Cir., 80 F.2d 834, 835, was a suit on a fidelity bond which provided no expiration date. The defaulting employee was listed as guaranteed in the amount of $12,-500. The bond provided that the employer should furnish to the surety company on each premium anniversary date a statement specifying the number of positions to be covered, the number of persons occupying each position and the amount of coverage required for each position. Pursuant to this requirement the employer furnished a schedule each year in which the defaulting employee was covered for $12,500. The schedules recited that they were schedules for the original bond and that the listed employees were guaranteed for the stated amount. Each successive schedule recited as its effective date the first day of each year, and there was no provision against cumulative liability until 1931, when the form of schedule was expanded to explicitly provide "that 'this list shall be deemed a part of the original bond and not a new obligation, nor shall it create a cumulative liability.'" The trial court entered judgment against defendant for $38,318.18, which was reversed on appeal, the Circuit Court of Appeals saying: "The bond and its yearly schedules did not constitute separate contracts. There is nothing either in the contract or the evidence to indicate that the original contract set up by the bond ever ended. None of the specified means of termination were employed, and there is no showing that it would expire automatically. The bond recited a consideration of an annual premium. This was paid yearly for a continuance of the insurance, as the premiums of a life insurance policy are paid to continue a single contract. The yearly schedules all expressly state that the coverage is under the original bond. The fact that the schedules recited a date upon

which they should become effective is not an indication that this original obligation terminated and was renewed each year."

Both sides agree that these are the only cases decided by Federal Appellate Courts where there was in issue the question of cumulative liability upon bonds of indefinite duration. In each instance the court held the liability to be single and continuous, although the bond contained no specific provisions against cumulative liability other than the statement of the amount for which the bond was given.

The receipts or invoices for the various annual premiums in the instant case refer in each instance back to the original bond, specifying the number thereof, and setting forth the amount as being the premium due on the various specified dates. None of the receipts or invoices incorporate in any way or refer to the conditions of the original bond, so as to lead to the conclusion that they were considered as new contracts or renewals of the original contract, but express in each instance merely that they are payments of annual premium on bond No. 4081612.

Both Ward and Coach cite the case of Ætna Casualty & Surety Co. v. Commercial State Bank, 13 F.2d 474, where Judge Lindley in the District Court held that payment of annual premiums on a surety bond created a new contract each year, and therefore constituted multiple liability under the bond. This decision was reversed by the Circuit Court of Appeals for the Seventh Circuit (19 F.2d 969) on other grounds, the Court of Appeals not passing on the question of whether there was a single or a multiple liability under the bond. These cross-defendants, however, call the court's attention to the fact that the Circuit Court of Appeals in the case of Hack v. American Surety Company, 7 Cir., 96 F.2d 939, 945, where it decided that multiple liability did not exist, commented upon and approved the doctrine enunciated by Judge Lindley in Ætna Casualty Co. v. Commercial State Bank, supra, where it was held that multiple liability did exist, saying: "The decision of Ætna Casualty & Surety Company v. Commercial State Bank, D.C., 13 F.2d 474 (reversed on other grounds, 7 Cir., 19 F.2d 969), holding the liability on a some-

what similar bond to be cumulative, would undoubtedly be accepted by us but for the fact that there is in the present contract some language which distinguishes that case."

Cross-defendants suggest that the District Court adopt these views as determinative of the law for this jurisdiction. I have carefully considered this citation, but I do not agree with counsel that the Circuit Court of Appeals by this language intended to determine that liability on a bond such as the one here in question is always cumulative.

I am of the opinion that the parties to the contract here under consideration have evidenced an intention to restrict the liability thereunder to one penalty without regard to the number of premiums paid upon it.

The issue as to the status and rights of Pinkerton's Detective Agency by virtue of the judgment recovered by it against Fidelity & Deposit Company in the Circuit Court of Appeals on October 25, 1943, and which this court on June 23, 1944, determined should remain in status quo, pending determination of the rights of all of the parties, constitutes the other of the two preliminary issues which this court has, by its order of June 29, 1945, directed shall be tried and decided in advance of the other issues in the case.

Pinkerton's Detective Agency, having recovered a judgment against Fidelity & Deposit Company, is no longer a claimant on the bond, the recovery of the judgment having through merger extinguished the original cause of action. Not being an adverse claimant to the sum which Fidelity & Deposit, upon filing its cross-complaint in the nature of a bill of interpleader, was obliged to pay into court, Pinkerton's Detective Agency should not be made a party to the interpleader proceeding.

In the case of Italiana v. Papa, 204 Ill. App. 343, Papa was named as beneficiary in an insurance certificate on the life of one diBernardino. diBernardino died and Papa obtained a judgment against the insurance association for the amount of the certificate. diBernardino's son and other creditors laid claim to the money and the insur-

ance association filed a bill of interpleader making Papa, the holder of the judgment, and the other claimants against the fund, parties defendant. A demurrer filed by Papa was sustained, and plaintiff having elected to stand by its bill, the same was dismissed for want of equity. The Appellate Court affirmed the dismissal, saying:

"The main purpose sought to be attained by complainant through its bill is to perpetually enjoin the enforcement of the judgment obtained against it in the Municipal Court.

"At the root of this case and controlling its decision lies the question of the right of complainant to have the collection of the judgment of the Municipal Court enjoined or its enforcement interfered with. The judgment remains in the Municipal Court undisturbed by appeal or writ of error. The defenses interposed by complainant have been adjudicated against it. The rulings of the court in that trial cannot be attacked collaterally or reviewed by the process of equity. The judgment is verity and binding upon the parties and cannot be collaterally disturbed. There is no challenge as to the court's jurisdiction of either of the parties or the subject matter of the suit. Neither is it contended that the judgment was obtained by fraud, accident or mistake. Nor can it be said to be unconscionable, for all the parties to the judgment were before the court and were heard in their several interests both before and at the time the judgment was entered. The claims of the parties and their rights were made known to complainant by the pleadings. Two courses were open to it. One to defend the suit in the forum in which it was brought, the other to have filed a bill of interpleader before adjudication of the rights of the parties in the suit at law and rendition of judgment. Having chosen to defend the suit at law, the unreversed judgment in that suit obtained is not subject to attack in a proceeding in equity."

■ The remedy of interpleader is afforded in order to protect one from the annoyance and hazard of many actions where two or more claimants are claiming to be entitled to the same property or fund or to "any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation," but under Italiana v. Papa, supra, interpleader may not be resorted to after an unsuccessful trial of a suit at law against one of the claimants to such property or fund. As was also said in the case of McKinney v. Kuhn, 59 Miss. 186: "To permit an unsuccessful defendant to compel the successful plaintiffs to interplead, is to increase instead of diminish the number of suits; to put upon the shoulders of others the burden which he asks may be taken from his own."

The temporary injunction entered against Pinkerton's Detective Agency is dissolved and Fidelity & Deposit's cross-complaint of interpleader against it is dismissed, with costs.

In accordance with the mandate from the Circuit Court of Appeals, judgment will be entered in case No. 4506 against Fidelity & Deposit Company and in favor of Pinkerton's Detective Agency in the sum of $10,000 with interest and costs.

■ Since the Circuit Court of Appeals found that Fidelity & Deposit Company was liable to Pinkerton's Detective Agency on its bond, and remanded the cause with directions that a judgment be entered on behalf of plaintiff, and holding as I do that the maximum liability of Fidelity & Deposit Company on its bond is restricted to one penalty, it follows that the other cross-defendants will be entitled to judgments against Fidelity & Deposit Company only in the proportion which their various claims bear to the balance of the $20,000 bond after satisfaction of the Pinkerton judgment.