## UNITED STATES v. AMERICAN SURETY CO. OF NEW YORK.

### Civ. No. 2074.

District Court, D. Connecticut.

Feb. 13, 1948.

On Rehearing April 23, 1948.

Adrian W. Maher, U. S. Atty. and Edward J. Lonergan, Asst. U. S. Atty., both of Hartford, Conn., for plaintiff.

Cyril Coleman and Day, Berry & Howard, all of Hartford, Conn., for defendant.

SMITH, District Judge.

This is an action brought by the United States of America to recover from a surety company which wrote a bond conditioned upon the faithful performance of the duties of a postal employee.

Defendant admits that it is liable for $2,000, the face amount of the bond as originally written and has tendered payment of that amount.

The plaintiff claims that it is entitled to recover on the bond, the amount of $3,865.97, the total amount of the embezzlement of the employee from October 26, 1935 to November 27, 1944, the period during which the bond was in effect, less recoveries from the employee. The embezzlement did not, in any one year, exceed the sum of $2,000.

The sole question in the case is whether the penalty in the bond is to be construed as cumulative for each year in which a premi-

---

[8] 28 U.S.C.A. §§ 921(a), 931(a).

[9] Cf. Johnsen v. American-Hawaiian S. S. Co., 9 Cir., 98 F.2d 847, 850.

[10] 28 U.S.C.A. § 932.

um was paid, or a single penalty in the amount of $2,000 for the full period of the continuance of the employment of the employee, after the writing of the original bond. The bond does not specify any period other than "on and after October 26, 1935". The bond contains on its face the statement that "the premium of this bond is 65¢ per $1,000.00 * * * total premium charged, $1.30". It is stipulated, however, that annual premium payments were made to, and accepted by, the defendant on account of the bond by the employee from 1935 to 1944, inclusive.

▉ The bond was executed and delivered in Connecticut. Connecticut law would, therefore, govern its interpretation, except insofar as the terms of the Federal statute requiring the bond which must have been in the contemplation of the parties at the time of its execution, may throw light upon the parties' intentions in using the language found in the bond.

The courts have differed in interpreting similar provisions in surety bonds. The Connecticut court has not, apparently, passed upon such a provision. Where the bond provides that the penalty shall not be cumulative, the courts have held the surety to the payment only of the single amount of the bond penalty even though the bond has been renewed by the payment of premiums from year to year.[1] Where the bond itself or the renewal receipts have not clearly negatived an intent to make the penalty cumulative for each renewal period, however, some courts have held that each payment of a premium for a period brought into effect a new bond in the same principal amount for the renewal period so that the obligee was entitled to payment of the amount of the defalcation in the original and in each renewal period up to the principal amount of the bond in each period.[2] Other courts have, however, held that the parties intended only to extend the time within which the original penalty would be a protection against default by the employee on the ground that a single contract is expressed, in nature similar to a life insurance contract, that is, an entire contract for the whole period of the employment, as the life contract is for the whole period of the life, even though separate premiums be paid for portions of the period.[3] Some of the courts appear to be influenced in arriving at this interpretation of the language of the bond by provisions requiring claim to be made within a short period of months following the end of the term of the bond. In these cases, if the renewals be considered new bonds, the time for discovery of defalcation would start to run at the termination of the premium period, usually one year, and no recoveries could be had for defalcations in earlier years covered by the bond, if the loss was not discovered within the few months' period following the end of the year in which the loss occurred. Such language as to time of claim, however, is not available to us in this case as an aid in ascertaining the parties' intention, since it does not appear in the bond in question.

The reasons which lead the courts on the other side to hold each premium period a new bond stem partly from a reluctance to believe that the parties would contemplate the continued payment of premiums for periods after the entire penalty of the bond had been used up by as yet undiscovered defalcation by the employee when protection could have been obtained by the writing of a new bond each year or each premium period by a new surety. The bond in suit

---

[1] Brulatour et al. v. Aetna Casualty & Surety Co., 2 Cir., 1936, 80 F.2d 834;

[2] Aetna Casualty & Surety Co. v. Commercial State Bank of Rantoul, D.C. E.D.Ill.1926, 13 F.2d 474; United States F. & C. v. Williams, 96 Miss. 10, 49 So. 742; Hawley v. United States Fid. Co., 100 App.Div. 12, 90 N.Y.S. 893, affirmed 184 N.Y. 549, 76 N.E. 1096; Ladies of Modern Maccabees v. Surety Co., 196 Mich. 27, 163 N.W. 7; Standard Acc. Ins. Co. v. Collingdale State Bank, 3 Cir., 85 F.2d 375.

[3] Fourth & First Bank & Trust Co. v. Fidelity & Deposit Co., 1926, 153 Tenn. 176, 281 S.W. 785, 45 A.L.R. 610; Quinlan & Tyson v. National Casualty Co., 1941, 311 Ill.App. 369, 36 N.E.2d 470; Hartford Accident & Indemnity Co. v. Hood, 1946, 226 N.C. 706, 40 S.E.2d 198; State ex rel. Freeling, Atty. Gen. v. New Amsterdam Casualty Co., 1925, 110 Okl. 23, 236 P. 603, 42 A.L.R. 829; National Bank v. National Surety Co., 1929, 105 N.J.L. 330, 144 A. 576; Montgomery Ward & Co., Inc. et al. v. Fidelity & Deposit Co. of Maryland et al., 7 Cir., 1947, 162 F.2d 264.

makes no reference to renewals or to annual or other periodic premium payments, nor do we have any evidence as to the wording of any premium receipts. Federal statutes permit payment and acceptance of the annual premium on corporate surety bonds furnished by postal employees as a compliance with the requirement for the renewal of such bonds within the meaning of sections 1–3 of Title 6 United States Code Annotated. Prior to 1928, section 5 of the Act of March 2, 1895 required the renewal of bonds every four years and an examination of bonds every two years with respect to their sufficiency. The Report of the House Committee indicates that the Congress felt that so long as the bonding companies were approved by the Treasury, payment of annual premiums on surety company bonds was as good a protection as the requirement for periodical renewal and inspection of bonds as to their sufficiency. Unfortunately the Report quoted does not indicate whether the Committee believed that annual renewals resulted in cumulative protection or not, although possibly the language can be interpreted to refer to a bond with a single penalty, in view of the statement in the Committee Report that the Department may require an official or an employee at any time to furnish a new bond if the existing bond is not sufficient, and in view of the provision for the deposit of Government bonds as security in place of surety bonds by officials and employees. However, these possible indications of Congressional intent are quite weak and the language may be just as consistent with an expectation by the Congress that securities deposited and non-cumulative bonds be made large enough in amount to furnish protection equivalent to that furnished by cumulative renewals of smaller bonds.

Particularly in view of the wording of the premium provision of the bond, it would appear that it was at least as likely that the parties in the case at bar intended the premium of $1.30 to pay the entire premium obligation of the bond in suit as that it was intended to be merely the first installment of an entire insurance contract with a single possible recovery for an indefinite period.

Since the surety is an insurance company, compensated for undertaking its obligation, the language of the bond written by it is to be construed against it where the meaning of the language is uncertain. It would have been easy for the company to insert language to make plain that the penalty was not to be cumulative if premiums were paid for later periods in addition to the premium mentioned on the face of the bond. The obligee would then be enabled better to protect itself against possible inadequacies of its security.

■ The Court must conclude that the parties intended additional coverage in the same amount as the original bond when they gave and accepted a similar premium annually after the payment of the premium expressed in the original bond. The plaintiff is, therefore, entitled to recover the full amount of the employee's embezzlement, less the recoveries from the employee, a total remaining loss of $3,865.97, consisting of losses incurred in the following periods:

| Period of Bond | Amount Due United States |
|---|---|
| 10/26/35 to 1936 | 0 |
| 10/26/36 to 1937 | 0 |
| 10/26/37 to 1938 | 0 |
| 10/26/38 to 1939 | $489.52 |
| 10/26/39 to 1940 | 1,222.21 |
| 10/26/40 to 1941 | 1,261.73 |
| 10/26/41 to 1942 | 403.03 |
| 10/26/42 to 1943 | 292.60 |
| 10/26/43 to 1944 | 0 |
| 10/26/44 to 11/27/44 | 196.88 |

$3,865.97 Total
744.20 Interest

$4,610.17 Final Total

(with interest from November 27, 1944 in the amount of $744.20)

It Is Ordered that Judgment be entered for the plaintiff to recover of the defendant the sum of $4,610.17 and its costs.

### On Rehearing.

A photostatic copy of the bond in suit discloses that a Government Printing Office form was used. This makes it apparent that the inference drawn from the typed copy originally in evidence, that the insurer drafted the form used, was in error.

Having in mind that the Government chose the words in contemplation of the words of the statute re annual premiums and that the defendant each year received a premium, although only a single year's premium amount was inserted in the bond form, what was the intention of the parties, to "extend" the original without cumulative penalties, or "renew" for an additional term with an additional unimpaired penalty for the new year?

In view of the annual payments, and the alternative possibility of obtaining cumulative coverage by going through the mechanics of writing fresh bonds yearly, referred to in the original Memorandum, it seems more likely that the parties contemplated cumulative coverage.

Judgment may be entered for the plaintiff in the amount of $3,865.97 with interest at the rate of 6% per annum from November 27, 1944, and its costs.

The Findings of Fact and Conclusions of Law heretofore filed herein February 16, 1948 are again filed and readopted.