UNITED STATES of America
v.
MARYLAND CASUALTY COMPANY,
a corporation.
No. 7139.

United States District Court,
D. Maryland, Civil Division.

Feb. 9, 1955.

George Cochran Doub, U. S. Atty., James H. Langrall, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Clater Smith, M. King Hill, and Clark & Smith, Baltimore, Md., for defendant.

CHESNUT, District Judge.

On June 17, 1947 Joseph G. Fahey as principal, and the Maryland Casualty Company, a Maryland corporation, as Surety, executed a fidelity bond to the United States of America "in the penal

sum of $5,000." Fahey was a disbursing agent employed by the United States Army stationed on an Army transport at Brooklyn, New York. The bond was duly and officially approved and went into effect on its date. No specified date or time was stated for its continuance in effect; but in a written application prepared on a printed government form Fahey stated that he was applying for "a bond of $5,000", and he agreed to pay to the Surety a premium of $5 a year for each year that the bond remained in force, and he did pay to the Casualty Company the sum of $5 for the first year of duration of the bond, and also made a second payment of $5 to the Surety in 1948.

Under date of April 7, 1949 the Department of the Army in writing notified Fahey that as he had been transferred to another position which did not require him to give bond, the bond which he had given was cancelled as of November 10, 1948, and a copy of this communication was sent by the Army to the Surety. On July 21, 1950 the Army notified the Maryland Casualty Company that Fahey was in default in his accounting with the government during the period of the bond in the amount of $26,118.39, and later, on January 12, 1953, the General Accounting Office prepared a detailed statement of the amount of the default aggregating $39,094.29, of which amount $9,556.02 had occurred between June 17, 1947 and June 17, 1948, and $29,538.27 had occurred between June 17, 1948 and November 10, 1948. When the Surety was notified by the government that Fahey had made default in a sum which was much larger than $5,000 it promptly forwarded to the government its check for the full penal sum of the bond; but this was refused by the government which claimed that as there had been a default for more than $5,000 in the first year and also in the second year, therefore the Maryland Casualty Company was liable in the amount of $10,000. Upon the latter's refusal to pay more than the penal sum of the bond the government instituted this suit on February 18, 1954, within the five year period of limitations applicable to suits on bonds of this character.

The question in the case presented and argued by counsel is whether the bond was a continuous one for only the one penal sum of $5,000 or whether it should be construed to be equivalent to two separate bonds, one for each of the two years, and that therefore the obligation was cumulative. I think, however, the question can be more precisely stated by saying that the bond was clearly a continuous bond and that the only question submitted is whether, in addition to being a continuous bond, the liability became cumulative from year to year while it was in force. The question must, of course, depend primarily upon the language of the bond. It was prepared by the government on a regular printed government form and submitted to and accepted by the Surety precisely as presented to it by the government. The whole of the bond reads as follows:

"Official (or Surety Bond) of Non-Commissioned Officers, Enlisted personnel, and Civilian Employees (Except Certifying Officers)—War Department
"Know All Men By These Presents, That we Joseph G. Fahey

of ——, in the County of ——, and State of ——, as principal and Maryland Casualty Company, a corporation existing under the laws of the State of Maryland, as surety, are held and bound unto the United States of America in the penal sum of Five Thousand ($5,000.00) dollars to the payment of which sum, well and truly to be made, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally, firmly by these presents.

"The Condition of This Obligation Is Such, That whereas the above-bounden principal has been appointed to a position of office in the War De-

partment and has accepted said appointment. Now, if the said principal shall and do at all times during his remaining on duty in the War Department, under said position or office and on duty under any position or office in the War Department to which he may be appointed, promoted, or transferred, from and including the date of approval of this bond by proper authority, carefully discharge the duties to which assigned, and faithfully expend all public money and honestly account for the same and for all public property which shall or may come into his hands without fraud or delay, then the above obligation to be void; otherwise to remain in full force and virtue.

"It is expressly understood and agreed that the termination of this obligation shall be effected only upon the approval by proper authority of a new official (or surety) bond in the case of the principal or when proper authority shall determine that the principal has been relieved from duty under which he is accountable for public funds or public property or when the Secretary of War determines that the interests of the United States do not require continuation of bond.

"In Witness Whereof, The parties hereto have executed this instrument under their several seals, this 17th day of June, 1947, the name and corporate seal of said surety being hereto affixed and these presents duly signed by its undersigned representative pursuant to authority of its governing bond.

"Witness to Signature of Principal

Donald G. – –　　　　　　as to　　　　　Joseph G. Fahey　(Seal)

SDA　SYM　No. 210–774

　　　　　　　　　　　　　　Maryland Casualty Company (Corporate

attest　　　　　　　　　　　　　　　　　　　　Seal)

Betty Thompson　　　　　　　　　By Velma S. Johns

　　　　　　　　　　　　　　　　　　Attorney-in-fact

The rate of annual premium on this bond is $1.00 per thousand; the annual premium on this bond is $5.00

FD　Form
1 Jun '1943　72"

Many officers or employees of the government are by statute required to give bond for the faithful performance of their duties, including among others, disbursing officers, Title 5 U.S.C.A. § 44. Title 6 U.S.C.A. §§ 1 to 15 enacted various provisions applicable to the class of bond in suit. The more significant sections are as follows:

Section 3 provides that such official bonds shall be renewed every four years but it may be required that they be renewed or strengthened more frequently, with certain exceptions not here material. The section provides:

"The liability of the principal and sureties on all official bonds shall *continue* and cover the period of service ensuing until the appointment and qualification of the successor of the principal." (Italics supplied.)

Section 5 provides a limitation period of five years after the statement of account for suits on such bonds.

Section 6 provides that in lieu of individual sureties the bond of an authorized corporate surety may be accepted. The Maryland Casualty Company is on the official list of approved surety companies.

Section 14 provides that the premium on such bonds shall not be paid by the United States.

Section 15 (particularly applicable here) provides that in lieu of furnishing a surety bond in the required penal amount, the official required to give bond may deposit United States Liberty Bonds

or other bonds or notes of the United States *in a sum equal at their par value to the amount of the penal bond* required to be furnished.

It will be noted from the language of the bond itself and from the relevant statutory provisions with regard to the bond that (1) it is to be a continuous bond; (2) that the United States is not to be liable for the payment of any premium on the bond while it continues and (3) that there is no provision or condition in the bond that it will terminate at the end of the first year if the premium for continuation thereafter is not paid by the principal. It will be noted that at the bottom of the page and below the language of the bond itself and after the signature of the parties there appears the following legend:

"The rate of annual premium on this bond is at $1.00 per $1,000; the annual premium on this bond is $5.00."

But as noted, this legend does not appear in the body of the bond and is not a condition of the liability of the Surety.

In addition to the general and very conventional language of the bond there is the following special provision which reads:

"It is expressly understood and agreed that the termination of this obligation shall be effected only upon the approval by proper authority of a new official (or surety) bond in the case of a principal or when proper authority shall determine that the principal has been relieved from duty under which he is accountable for public funds or public property or when the Secretary of War determines that the interests of the United States do not require *continuation* of the bond." (Italics supplied.)

The proper determination of the liability of the surety on the bond must, of course, depend primarily upon the language of the bond itself as affected, it at all, by the provisions of the statute referred to. And in construing the language of the bond it is well to bear in mind some of the rules which have been generally, if not uniformly, applied in such matters. In the first place, while this is an official bond which might have been given by individual sureties, it was a corporate surety bond. Until about 60 years ago the sureties on official bonds were generally individuals and the rule was that in construing the liability of such sureties the principle of construction was *strictissimi juris*, that is to say, the surety was not obligated except to the very letter and necessary intent of the language of the bond itself. In other words, the bond was treated as a matter of suretyship and not of insurance. But after the advent of the corporate surety the rule came to be that the contract should be regarded rather as one of *insurance* than of suretyship. Richards on the Law of Insurance, 4th Ed. p. 854, §§ 475–476; Williston on Contracts, Rev. Ed. Vol. 4, §§ 1212A. And in insurance contracts it is the general rule, and particularly so in the federal courts, that real ambiguities in the wording of the bond are interpreted most favorably to the insured and against the insurer, because ordinarily the bond is prepared by the surety company which has the opportunity to state plainly the terms of its obligation. American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977. However, I find this latter rule of construction really not applicable here at all because in the first place I find no ambiguity in the language of the bond and none indeed when the bond is read in connection with the statutory provisions referred to; furthermore this bond was not prepared by the surety but is an official form of bond prepared by the Department of the Army and tendered to and accepted and executed by the surety in precisely the form submitted to it. Williston, supra, Vol. 3, § 609.

The contention of the government is that the proper construction of the bond is to hold that it in effect constituted a new bond for each successive year that it continued and that the surety became obligated, in addition to the penal

sum of $5,000, for a like sum for each year thereafter that the bond continued in force, in the event that there was default of the principal in each of the successive years; or, otherwise stated, that the penal sum of the bond became cumulative from year to year and if the bond continued for four years or more the surety might become obligated for as many times $5,000 as the number of years that the bond so continued. I find no basis for this contention from the language of the bond or from the provisions of the statutes. It seems to me to be plainly contrary to the proper rules of judicial construction of such bonds.

In Leonard v. Aetna Casualty & Surety Co., 4 Cir., 80 F.2d 205, 206, opinion by Judge Soper, the Court of Appeals of this Fourth Circuit dealt in principle with a very similar situation although the suit was not on a government bond. The bond in that case was a fidelity bond given by a corporate surety to a bank insuring in the amount of $2,500 the fidelity of a bookkeeper. The bond was obtained by the bank which agreed to pay an annual premium but it was not stipulated that the failure to pay the annual premium would terminate liability on the bond. On the contrary the bond provided that it should terminate (1) upon written notice from one party to the other or (2) retirement of the employee from his position or (3) discovery of loss. The bank sustained a loss by lack of fidelity of the employee of more than the face amount of the bond of $2,500 in several successive years and thereupon made demand upon the surety for about $7,500. This the surety refused to pay but tendered the $2,500, the full amount of the bond. It was held that the bond was a continuous bond but not one of cumulative liability from year to year. As stated by Judge Soper in his opinion:

"The question at issue is to be decided by determining whether the parties contemplated a single continuous contract covering the entire period, or a series of independent contracts, each for the period of one year; and the solution necessarily depends upon the terms of the bond."

And the holding of the court, after stating the provisions of the bond as above mentioned, was—

"These terms and conditions of the bond lead us to the conclusion that only one contract was effected by the parties to this cause, and that the decision of the District Judge that the surety was liable for only $2,500 should be sustained."

The conclusion reached by the Fourth Circuit has been cited with approval in many subsequent federal judicial decisions. Particularly in point is a quite similar case in the Seventh Circuit, Montgomery Ward & Co. v. Fidelity & Deposit Co. of Maryland, 162 F.2d 264, 267; and in another case in the Third Circuit Aetna Casualty & Surety Co. v. First National Bank of Weatherly, 103 F.2d 977, at page 979. And particularly in point here (in view of the principal reliance of the government in this case on the decision of the Second Circuit, United States v. American Surety Co. of N. Y., 172 F.2d 135, 7 A.L.R.2d 940) is the approval of the doctrine of the Leonard case by the Second Circuit in Brulatour v. Aetna Casualty & Surety Co., 80 F.2d 834, where at page 836, it was said:

"The authorities support the appellant's claim. Leonard v. Aetna Casualty & Surety Co. (C.C.A. 4, Nov. 12, 1935) 80 F.2d 205, [and also citing other cases] illustrate the rule that, where the bond is for an indefinite term, the date it begins to run being the only date given, the fact that the premiums were paid annually does not make the relation a series of separate yearly contracts."

And this, I think, is now the opinion in very many if not the majority of federal and state courts although in earlier years, and still to some extent at the present time, there are courts which hold bonds of like or similar nature to be cumulative as to penalty from year to year. The cases pro and con and the

present modern trend are very extensively reviewed in 7 A.L.R.2d 946 to 990. And see with particular reference to the Leonard case, supra, 7 A.L.R.2d at pages 949, 952–953.

As there is no ambiguity in the language of the bond sued on and as the rule of construction in this Circuit is that a bond of similar language and import is to be construed as a continuous bond without cumulative penal obligation from year to year, it occurred to me at the hearing of the case that to sustain the government's contention it would be necessary to at least show by extraneous evidence some practical conditions or decisions, practice or experience from which it could be inferred that it was the intention of the parties to convert the continuing bond in the penal sum of $5,000 into an obligation of that amount cumulative for each successive year. But counsel for the government thought it quite unnecessary to submit any such evidence, maintaining its position principally upon an opinion of the Second Circuit in the case of United States v. American Surety Company of New York, D.C., 77 F.Supp. 318; Id., 172 F.2d 135, 7 A.L.R.2d 940, certiorari denied 337 U.S. 930, 69 S.Ct. 1494, 93 L.Ed. 1737. The opinion is by Circuit Judge Clark and was concurred in by Circuit Judge Augustus N. Hand, but with an extended dissent by Circuit Judge Swan.

Counsel for the defendant at the hearing did submit some evidence with regard to practical business experience on the part of surety companies with respect to the issue involved. In substance it appeared that prior to the holding in the American Surety case in 1949 (after the execution and termination of the bond here in suit) it had been generally understood by surety companies that their liability on such official bonds of a continuous nature was limited in amount to the penal sum of the bond which was not cumulative from year to year. Thus it may be noted that in 8 American Jurisprudence—Bonds—§ 86 (1937) and 43 American Jurisprudence—Public Officers—§ 415 (1942) it is said in substance

that the surety is not liable for a sum in excess of the penalty of the bond. See also the Principles of Surety Underwriting by Mackall (1929) §§ 52 to 60; Farrar v. United States, 1831, 5 Pet. 373, 30 U.S. 373, 8 L.Ed. 159; Hartford Acc. & Indem. Co. v. Hood, 1946, 226 N.C. 706, 40 S.E.2d 198.

The bond in this case was executed, delivered and officially approved in Washington, D. C. As the jurisdiction in the case is not based on diverse citizenship it is not particularly important to especially consider judicial decisions of the State or District where it was executed. But it is not inappropriate here to point out that the doctrine of the Leonard case has also recently been expressly approved by the Court of Appeals for the District of Columbia in Columbia Hospital for Women and Lying-In Asylum v. U. S. Fidelity & Guaranty Co., 1951, 88 U.S.App.D.C. 251, 188 F.2d 654, 657. In that case the bond was a continuous one which provided for the payment of annual premiums as did the Leonard case but the bond specifically provided against any possible cumulative penalty. The point of interest, however, in that case is that, in reviewing the authorities on the subject of continuous or cumulative bonds, the Court said:

"The weight of authority is in favor of the surety companies, even where there has been no specific contract provision against cumulation of liability. It has generally been held that 'where the bond is for an indefinite term, the date it begins to run being the only date given, the fact that the premiums were paid annually does not make the relation a series of separate yearly contracts.' Brulatour v. Aetna Casualty & Surety Co., 2 Cir., 80 F.2d 834, 836. Accordingly, even in the absence of a specific provision against cumulative liability, it has been held that the continuous term of the bond impliedly excluded liability in excess of the amount stated in the bond, in spite of the extent of actual losses over the years.

Montgomery Ward & Co. v. Fidelity & Deposit Co., 7 Cir., 162 F.2d 264; Leonard v. Aetna Casualty & Surety Co., 4 Cir., 80 F.2d 205."

The case is of interest here because it illustrates the modern trend of authority as previously stated.

It has been pointed out that there is no obligation on the United States in these official bonds to pay the premium; and, as the amount of premium involved is quite small, it frequently happens that the surety often fails to be able to collect from year to year the renewal premium. It may also be noted, as is generally known by those engaged in the insurance business, premiums collected are the principal source for the payment of expenses and losses incurred. To impose a liability on a corporate surety for cumulative penal sums in a bond of indefinite continuance and without opportunity to cancel the risk for any cause would be contrary to the general insurance practice and argumentatively is inconsistent with the idea of cumulative obligations in excess of the amount of the penal sum stipulated in the bond.

As the American Surety case, supra, is the only one brought to my attention which has dealt with an official bond, it is important, of course, to carefully consider the reasoning of the court in that case which held the bond of a postmaster to have the effect of a cumulative obligation on the surety. And also the eminent authority of that court requires careful consideration in dealing with a similar situation, but I, of course, must also carefully consider the decision of this Circuit in the Leonard case which in principle seems to me to require the contrary conclusion.

The official bond sued on by the United States in the American Surety case was a bond given by a postmaster in 1935 which continued until 1944. The amount of the bond was $2,000. The condition of the bond shortly stated was for the faithful discharge of duties and trusts imposed on the postmaster. He paid the premium on the bond annually from 1935 to 1944. During the period of 1938 to 1944 he defaulted in accounting for moneys in the aggregate net amount of about $3,800, not more than $2,000 of which occurred in any one year. The Surety Company tendered the full $2,000 but not more, and in the suit on the bond it was held both by the district judge and the Court of Appeals (one Circuit Judge dissenting) that the government was entitled to recover the full amount of the net loss although in excess of the face amount of the bond.

The precise form of the bond varies in some details from the phaseology of the bond here in suit. A postmaster's bond is subject not only to the statutory provisions of 6 U.S.C.A. §§ 1 to 15, but also to certain particular regulations of the Post Office Department; and in the opinions of the district judge, and more fully in the opinion of the Court of Appeals, attention is called to some of the particular provisions applicable to postmaster's bonds. The stated obligation of the bond is not expressed to be (as in the present case) in a "penal sum" of dollars but is expressed as an obligation "to pay to the United States of America the sum of two thousand dollars ($2,000)." The rate of premium for the bond is stated in the bond itself; and the condition of the bond, unlike that in the present case, does not expressly say that the bond is to "continue". However, I do not find these minor differences in phraseology of the bond are of material importance in this case, in view of the rationale of the opinion in the American Surety Company case which, after careful reading, seems to me to be applicable to the present case unless, as I think, it is irreconcilable in principle with the decision in this Circuit in the Leonard case.

As I read the opinions both of the district judge and the Court of Appeals in the American Surety case, the principle of the decision is to apply the rule of construction that a continuous bond is to be cumulative in amount from year to year where the annual premium is paid for its renewal; that is to say, in legal effect the payment of each annual prem-

ium by the employee constitutes a new and separate additional bond. In this respect the opinion adopts and applies the principle of construction which has been adopted by some judicial decisions but which I think is shown by the extensive annotations in 7 A.L.R.2d 946, 947, to be against the modern trend of cases at least in the federal Courts of Appeal and the holding of the Fourth Circuit in the Leonard case.

More particularly on this point it is to be noted that in the original opinion of the District Court of Connecticut, 77 F.Supp. 318, the district judge first held that payment of an annual premium on the bond (though made by the employee and not by the United States) created an ambiguity as to the intent of the parties in the language used in the bond and that while the matter was not free from doubt it should be held that as the bond had been prepared by the surety company and not by the United States this ambiguity should be interpreted against the surety because it would have been an easy matter for the surety in preparing the bond to have expressly stipulated therein that the amount of the bond should not be cumulative from year to year. However, when it was later called to the attention of the judge that the bond had not been prepared by the surety but by the government on one of its printed forms, the judge wrote a supplemental opinion on re-hearing stating that the inference which he had drawn was in error, but he nevertheless adhered to the conclusion as he stated, 77 F.Supp. at page 321:

"Having in mind that the Government chose the words in contemplation of the words of the statute re annual premiums and that the defendant each year received a premium, although only a single year's premium amount was inserted in the bond form, what was the intention of the parties, to 'extend' the original without cumulative penalties, or 'renew' for an additional term with an additional unimpaired penalty for the new year? In view of

the annual payments, and the alternative possibility of obtaining cumulative coverage by going through the mechanics of writing fresh bonds yearly, referred to in the original Memorandum, it seems more likely that the parties contemplated cumulative coverage."

On appeal both the reasoning and the conclusion of the district judge were affirmed in a full opinion by Circuit Judge Clark in which numerous judicial decisions were reviewed. The rationale of the opinion as I have read and re-read it, seems to clearly adopt as the rule of construction to be applied that of the cases which take a view contrary to the Leonard case. Particularly in point here is the emphasis put upon the opinion of District Judge Lindley in Aetna Casualty & Surety Co. v. Commercial State Bank of Rantoul, D.C.E.D.Ill.1926, 13 F.2d 474, which perhaps is the opinion which most strongly states the view of those courts which adhere to the rule that the payment of an annual premium on a continuing bond constitutes a new and separate contract thus accumulating from year to year the penal sum of the bond. That case was particularly noted by the district judge in the American Surety case in a foot-note to his original opinion and is again referred to by Circuit Judge Clark on appeal. Judge Lindley's decision was overruled on other grounds on appeal to the Seventh Circuit; but more particularly I think it should be noted that the opinion was in effect later overruled on the particular point by the Seventh Circuit in the case of Montgomery Ward & Co. v. Fidelity & Deposit Co. of Md., 162 F.2d 264. Even more important is it that in the Leonard case, Judge Soper particularly referred to Judge Lindley's opinion as illustrative of cases holding to the contrary.

In my opinion the case at bar is an even stronger case for the application of the doctrine of the Leonard case. There the initial question for determination was whether the bond should be interpreted from its language as a continuous bond or a series of new bonds for each

year for which the premium was paid. Here both by the express language of the condition of the bond and by the terms of section 3 of title 6 U.S.C.A., the bond is clearly a continuous bond. In the instant case the bond itself imposes no obligation on the United States to pay any premium and section 14 of 6 U.S.C.A. expressly provides that there shall be no such obligation. In the Leonard case the beneficiary of the bond was obligated to pay annual premiums although it was not stipulated that a failure to do so would constitute a breach of the bond thus terminating the obligation of the surety.

■ Even more important, I think, in this case is the effect of section 15 of 6 U.S.C.A. which, as already mentioned, provides that in lieu of a bond the principal can substitute United States Bonds or Notes "in a sum equal at their par value to the amount of such penal bond * * *." This seems to me to be a very clear and certain indication that there was no intention on the part of Congress that a penal bond in a certain monetary amount should be cumulative in amount from year to year. This has been most clearly and succinctly expressed by Circuit Judge Swan in his dissent in the American Surety case where he said, 172 F.2d 139:

> "It is obvious that these provisions permitting the deposit of $2,000 of Government securities in place of a surety bond for that amount, did not contemplate that an employee who took advantage of them must annually thereafter throughout his term of service post additional securities of like amount. Since there is no 'cumulative' liability imposed on the employee who elects to post securities in lieu of a surety bond, it seems to me wholly inconsistent to impose such liability on one who elects to give a bond instead of posting securities."

As to this point, in apparent answer to the view expressed by Judge Swan, Judge Clark's opinion for the court said, 172 F.2d at page 137:

> "But the deposit provision exists side by side in the statutes with the original quadrennial renewal provision, and it seems particularly unlikely that Congress would have meant not to protect the government by annual premiums paid to the same insurer, when protection could have been obtained merely by application to another surety company."

In passing it may be said that in fact there was no application to any other surety company either in the American Surety case or in the case at bar. But perhaps it is more apposite here to point out that the reference made to the "statutory requirement for quadrennial renewal provision" refers to 6 U.S.C.A. § 3, which, in its first sentence provides—

> "Every officer whose duty it is to take and approve official bonds shall cause all such bonds to be renewed every four years after their dates, but he may require such bonds to be renewed or strengthened oftener if he deem such action necessary."

In my view this provision for this renewal or strengthening of official bonds does not import any intention on the part of Congress to make such bonds cumulative from year to year, on the contrary it seems clear to me from the nature of the subject matter that the requirement as to quadrennial renewal or strengthening was enacted for the purpose of assurance that the surety or sureties on the bond would be financially able to discharge their obligation if and when called upon to do so. Thus it will be noted that in section 2 entitled "Examination as to sufficiency of sureties" it is provided that officers approving official bonds shall examine into the sufficiency of sureties thereon every two years. Section 3 is in pari-material. Both section 2 and section 3 stem from the Act of March 2, 1895, c. 177, § 5, 28 Stat. 807, which was a General Appropriation Act for the expenses of the executive, legislative and judicial departments of the Government. And it should be remembered that before 1895 sureties on official bonds were

generally individual sureties and it was only at or about that period that the substitution of surety companies came into practice.

The opinion in the American Surety case also refers to the concluding proviso in section 3 to the effect that the payment and acceptance of the annual premiums on corporate surety bonds of bonded officers "shall be a compliance with the requirement for the renewal of such bonds within the meaning of sections 1 to 3 of this title." I find nothing in this provision on which to base an inference that Congress intended a required penal bond in a certain amount to be cumulative from year to year. It is conceivable that a renewal bond might operate as a substitution for the original bond although I note that in an opinion of the Attorney General in 1906, 26 Op.Atty.Gen. 70, the contrary view was held by him. Nor is this proviso to section 3 applicable to the facts of this case because there was no renewal bond required in the two years that the bond sued on was in force.

In closing this long opinion I would call attention to two sentences in Judge Swan's dissenting opinion which I think are applicable to the instant case. 172 F.2d 139, 140:

> "Hence payment of the stated premium gave the obligee of the bond protection in the amount of $2,000 throughout the principal's term of service, whether or not additional sums were collected by way of annual premiums under some collateral agreement with the principal. * * *
>
> " 'The authorities * * * illustrate the rule that, where the bond is for an indefinite term, the date it begins to run being the only date given, the fact that the premiums were paid annually does not make the relation a series of separate yearly contracts.' "

For these reasons I conclude that the government is entitled to recover only $5,000 on this bond. Counsel have not discussed the question as to whether,

in view of the prior tender by the surety of this principal amount, interest should be added to the principal sum of the bond. And with regard to the matter of costs I note from the papers that on May 2, 1954 the defendant filed a written notice of offer of judgment to pay $5,000 with costs accrued to date of the offer in accordance with rule 68 of the Federal Rules of Civil Procedure, 28 U.S.C.A. If counsel desire it, I will be glad to hear them with respect to the precise form of judgment to be entered in the case.